# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39116**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Nikolas J. SMITH**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 January 2018

————————————

*Military Judge:* Mark W. Milam.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, and reduction to E-1. Sentence adjudged 14 April 2016 by GCM convened at Ramstein Air Base, Germany.

*For Appellant:* Major Annie W. Morgan, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and CARRILLO, *Appellate Military Judges.*

Judge CARRILLO delivered the opinion of the court, in which Senior Judge HARDING and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

CARRILLO, Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty of two specifications of attempted lewd acts upon a person whom he believed to be a child under the age of 16, by indecent communication and exposing his genitalia, in violation of Article 80 of the Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 880.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for one year, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises two assignments of error: (1) whether the findings of guilt are incorrect as a matter of law because Appellant was entrapped by the Government; and (2) whether the military judge erred when he declined to instruct on the "due process" entrapment defense and denied the defense motion to dismiss based on egregious government conduct. We find no prejudicial error and affirm.

## I. BACKGROUND

While stationed at Ramstein Air Base, Germany, Appellant responded to an online advertisement in the Casual Encounters section of Craigslist.com (Craigslist) on 14 November 2014. Casual Encounters is a commonly known communication platform for persons seeking to engage in casual sexual relationships. The particular advertisement, "Dependent Looking for Company – W4M (Ramstein),"[2] was in fact a ruse posted by Air Force Office of Special Investigations (AFOSI) Special Agent (SA) TK as part of an undercover operation aimed at catching online military sexual predators. SA TK was stationed at AFOSI headquarters in Quantico, Virginia, and was the Air Force liaison to the Internet Crimes Against Children Task Force (ICAC) in Northern Virginia.[3]

SA TK used the persona "Tina," a 14-year-old female military dependent of a single mother. The November 2014 "Tina" posting advertised, in part, "Looking for an Air Force man with common interest in mind . . . lets chat, swap pics, share some stories and take it from there." Appellant responded "Hey I'm Nick, how are you? I'm 24 years old in the air force. What do you like to do for fun? I am 6'1 in athletic shape with blonde hair blue eyes." Appellant also included a picture of himself.

SA TK, as "Tina," replied, "I am a dependent but probably not what your [sic][4] thinking. I'm a 14 year old, very mature . . . looking for a mature Air

---

[1] Appellant was acquitted of two separate specifications of attempt to commit a sexual act upon a child in violation of Article 80, UCMJ.

[2] "W4M" stands for "women for men."

[3] During the investigation, SA TK conducted the online chatting from Virginia, while AFOSI agents in Germany conducted all other investigative duties.

[4] The nature of text messaging is that it typically features brevity over traditional grammatical correctness. The text exchange between "Tina" and Appellant contains many typos and grammatical errors. These errors will not be pointed out individually with "[sic]" unless the intended meaning is not clear.

Force man to nurture and teach my [wink emoji]." The advertisement also provided the Yahoo.com Messenger (Yahoo) address of "daddyluver3" for interested individuals to respond to "Tina." Appellant responded to "daddyluver3" via Yahoo and began corresponding with "Tina." The tone quickly became flirtatious and continued over several days even after "Tina" reiterated that she was 14 years old. The two continued to correspond and eventually discussed "meeting up" until Appellant stopped responding to "Tina" on 11 December 2014.

However, Appellant reinitiated contact on 27 January 2015, after SA TK posted a second, similar advertisement on Craigslist. They continued to talk over the course of several days. During this time Appellant wrote, "Hmm what turns u on most . . . I'm just laying in bed . . . you should come here . . . [I]f only you could drive lol." On 28 January 2015, "Tina" asked, "y u into yng girls lol," to which Appellant responded, "I'm usually not lol age doesn't matter to me . . . I'm so horny right now." "Tina" eventually sent digitally age-regressed photos to Appellant of another AFOSI agent, representing them to be herself, to which Appellant replied, "Your so pretty . . . How old are you again?" "Tina" responded "14," to which Appellant wrote, "Ugh :/" and "That's annouying."

At the end of January 2015, Appellant coordinated meeting with "Tina" in February. On 19 February 2015, Appellant sent two pictures of his naked penis and asked, "do you wanna see it in person [wink emoji]" and continued to engage "Tina" in overtly sexual conversation. On Wednesday, 25 February 2015, "Tina" confirmed the plan to meet Appellant and provided an address where she would be located. Appellant proceeded to the vacant house and was apprehended by AFOSI. Two unopened condoms were lawfully seized from Appellant's person at that time.

## II. DISCUSSION

### A. Entrapment: Subjective Test and Legal Sufficiency

At trial, the military judge instructed on and Appellant argued the affirmative defense of entrapment. As the members convicted Appellant of the two attempted lewd act specifications, implicitly they were convinced beyond a reasonable doubt that Appellant was not entrapped as to those specifications. Appellant now raises the entrapment defense on appeal.

"Since the trier of fact found against him on the entrapment issue, appellant can only prevail by showing that these findings are incorrect as a matter of law." *United States v. Vanzandt,* 14 M.J. 332, 345 (C.M.A. 1982) (citing *United States v. Albright,* 26 C.M.R. 408, 411 (C.M.A. 1958)). Appellant asserts the findings of guilt are incorrect as a matter of law because he was entrapped.

We review issues of legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993). "The test for legal sufficiency is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (quoting *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002)). Importantly, "[t]he term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). "In applying this test, 'we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution.'" *Id.* (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993)); *see also United States v. Rogers*, 54 M.J. 244, 246 (2000).

A successful claim of entrapment requires evidence that the criminal design or suggestion to commit the offense originated with the Government, not the accused, and the accused was not predisposed to commit the offense. *See* R.C.M. 916(g); *see also United States v. Dowd*, No. ACM 39073, 2017 CCA LEXIS 738, at *5–7 (A.F. Ct. Crim. App. 29 Nov. 2017) (unpub. op.). In litigating the entrapment defense, applying what is known as the "subjective" test for entrapment, the Defense has the initial burden of showing some evidence that an agent of the Government originated the suggestion to commit the crime. *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992). Once that hurdle is met, "the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense. . . ." *Id.* (citations omitted).

"The question of predisposition relates to a law-abiding citizen. 'A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes.'" *Id.* (quoting *United States v. Evans*, 924 F.2d 714, 717 (7th Cir. 1991)). One who accepts an invitation to commit a crime without being offered an extraordinary inducement shows a predisposition to commit the crime. *Id.* (quoting *Evans*, 924 F.2d at 718). Extraordinary inducement means more than merely providing Appellant the means or opportunity to commit a crime. *Id.* at 358. Instead, the Government's conduct must:

> create[ ] a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense . . . . Inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment,

promises of reward, or pleas based on need, sympathy, or friend-ship.

*Id.* at 359–60 (alteration in original) (citations omitted). Indeed, the Government may use undercover agents and informants to ferret out crime and afford opportunities or facilities for criminals to act upon. *Jacobson v. United States,* 503 U.S. 540, 548 (1992); *see also United States v. Howell*, 36 M.J. 354, 358 (C.M.A. 1993); *Whittle*, at 208. "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932) (citations omitted); *see also United States v. Russell*, 411 U.S. 423, 435–36 (1973). For example, law enforcement may pretend to be someone other than a government agent. *See Howell*, 36 M.J. at 358.

We have reviewed the evidence of record in this case and find Appellant has not met his initial burden of showing that the original design or suggestion originated with the Government. Although it was SA TK who originally posted both Craigslist advertisements, neither contained any sexually explicit content, and Appellant, along with many others, voluntarily contacted SA TK. In her first response, "Tina" told Appellant she was 14 years old. Other responders ceased contact after learning this; however, Appellant continued to converse with "Tina," initiated sexually explicit discussions, and later sent her two pictures of his naked penis. Exhibits containing the photos and the text messages between Appellant and "Tina" were admitted into evidence. While SA TK provided opportunities for Appellant to commit the offense, nothing in the record indicates that Appellant was induced by SA TK to commit the offense by such persuasion that would cause an ordinarily law-abiding person of average resistance to commit the charged crime. Even though SA TK falsely represented facts such as his gender and age, and went as far as to inquire whether Appellant had condoms, these actions do not amount to overreaching by the Government. SA TK did not pressure or coerce Appellant to commit the offense of attempted lewd acts upon a person whom he believed to be a child under the age of 16. Appellant made the decisions to respond to the advertisements, and despite some initial reticence he continued sexually explicit communication with someone he believed to be a 14-year-old girl. As such, we find beyond a reasonable doubt that there was no improper Government inducement and therefore, Appellant failed to satisfy his initial burden of showing that the criminal design originated with the Government.

Recognizing, however, that the military judge found a sufficient basis to instruct the court members on the defense of entrapment, we will assume, without deciding, that the burden shifted to the Government for purposes of our analysis. Under that assumption, we nevertheless find beyond a reasonable doubt that Appellant was predisposed to commit the offenses of which he was convicted. Appellant initiated the communications regarding sex with

someone whom he believed was a child. Although he may have been wary at the outset, it took only six days of banter for Appellant to ask "Tina" when she was free to meet to engage in sexual intercourse. The Government need not present evidence that Appellant committed or attempted to commit a similar offense on a previous occasion. A person's readiness and willingness to commit the offense is evidence of predisposition. *See Whittle*, 34 M.J. at 208.

Appellant, by his actions, demonstrated his predisposition to commit the underlying offense. Accordingly, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found Appellant was not entrapped beyond a reasonable doubt. Therefore, the findings of guilt are not incorrect as a matter of law.

## B. "Due Process" Entrapment Defense

Appellant argues that the military judge erred when he "declined to provide a 'due process' entrapment defense instruction and denied the defense motion to dismiss based on egregious government conduct." During trial, Appellant made a motion to dismiss under the "due process version of entrapment," asserting that Appellant's Fifth Amendment[5] right to due process was violated because the Government engaged in outrageous behavior. Appellant also submitted a proposed instruction on the "due procedural entrapment issue." The military judge expressed doubt as to whether there even existed a separate "due process" defense to entrapment; however, he treated it as valid. We address first whether this separate defense does exist, then the motion to dismiss, and finally the Defense's proposed jury instruction.

### 1. Objective Test

In addition to the "subjective" test for entrapment described above, the military courts have recognized an "objective" test whereby a court may find the Government's conduct so outrageous or shocking to the judicial conscience that it amounts to a violation the Due Process clause of the Fifth Amendment of the Constitution and thereby constitutes entrapment as a matter of law. *United States v. Berkhimer*, 72 M.J. 676, 680 (A.F. Ct. Crim. App. 2013); *see Vanzandt*, 14 M.J. at 343 n.11. We note, at the outset, that we are not aware of any case from our superior court finding outrageous conduct such that it violated an accused's right to due process under the Fifth Amendment. Yet, *Vanzandt* implied an application of the objective, constitutional test for entrapment. *Id.*

To establish entrapment as a matter of due process, Appellant must show either excessive Government involvement or significant Government coercion

---

[5] U.S. CONST. amend. V.

in causing the crime to occur under the totality of the circumstances. *Berkhimer*, 72 M.J. at 680. In *Berkhimer* we further explained:

> This is an "extraordinary defense reserved for only the most egregious circumstances" and is not to be invoked every time the government acts in a deceptive manner or participates in a crime it is investigating. . . . To meet the threshold standard of being fundamentally unfair or shocking, the accused must generally show the government acted with coercion, violence or brutality to the person.

*Id.* (citations omitted). "The issue of whether an accused's due process rights were violated is a question of law that this court reviews de novo . . . . When doing so, we give substantial deference to the military judge's findings of fact and will not overturn them unless they are clearly erroneous." *Id.* (citations omitted).

### 2. Motion to Dismiss

This court reviews a military judge's ruling on a motion to dismiss for an abuse of discretion. *United States v. Douglas*, No. ACM 38935, 2017 CCA LEXIS 407, at *19 (A.F. Ct. Crim. App. 15 Jun. 2017) (citing *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)). "An abuse of discretion occurs when a court's findings of fact are clearly erroneous or the decision is influenced by an erroneous view of the law." *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (internal quotation marks and citations omitted).

This case involved a sting-type operation, wherein the members ultimately found Appellant availed himself of an opportunity offered by a Government agent. On cross-examination, trial defense counsel elicited testimony from SA TK about his training, the plans for the undercover operation, and the scope of the authority he had to run it as he did.[6] Appellant made a motion to dismiss, arguing SA TK failed to adhere to an authorized operation, and that those actions violated Appellant's due process right.

Counsel did not point to any specific abuse, but instead focused only on the operational aspect, asserting that entrapment occurred when SA TK placed the advertisement on Craigslist because "the lustfulness is put into that ad,

---

[6] Appellate Exhibit IV, the operational plan, was sealed by the trial judge. All the information about that exhibit used herein is from the transcript that was provided in open court.

the sexuality and the unusual nature of a woman seeking a man," and in part because it was not in a place "reasonably designed to" capture "pedophiles" or others in "our society who are seeking to engage in sex with underage individuals." The military judge disagreed, "not[ing] that the operation that was contemplated, approved, and in fact used in this case was specifically approved by the AFOSI general, at least in a broad sense, and specifically that ad [that SA TK posted] was in there." Noting further during argument that every stealth or deceptive technique does not need approval, the military judge found that the advertisement placed by SA TK was executed in accordance with the approved plan. The military judge also addressed cases in which the government conduct *had* been outrageous, and found they differed greatly from the instant case:

> Stealth and deception are authorized for law enforcement agents. The cases that specifically offend the appellate courts have to do with facts that are much different and much more egregious than anything in this particular case. They typically involve undercover or confidential informants working for the government who have gone far beyond the bounds of what is considered decent and acceptable in treating people . . . they are trying to trap . . . But those particular cases . . . have so offended the appellate courts they felt action needed to be taken, however, they did not specifically come out and say it was a violation of the due-process clause of the Fifth Amendment to the Constitution . . . . This case is just much different.

We agree with the military judge and find that the undercover operation, as executed, was generally approved. Any incongruity between the plan and the manner in which SA TK conducted the online portion of the investigation is not shocking. While there may be some question as to the currency of SA TK's undercover chat training, we have reviewed the entire record, and find the facts do not support a claim that the agent's conduct was such outrageous behavior that, "reversal would be required on due process grounds." *Vanzandt,* 14 M.J. at 345 (citing *Hampton v. United States*, 425 U.S. 484 (1976)).

The military judge clearly detailed his factual and legal findings. There is nothing "arbitrary, fanciful, clearly unreasonable, or clearly erroneous" about his decision. *Lloyd,* 69 M.J. at 99 (internal quotation marks and citations omitted). Instead, this appears to be exactly the type of "simple" sting operation contemplated by the *LeMaster* court, and the military judge's decision that the behavior was not outrageous—warranting a dismissal—was justified. *United States v. LeMaster,* 40 M.J. 178 (C.M.A. 1994). Thus, we find no abuse of discretion in the military judge's denial of the defense motion to dismiss based on the Due Process Clause.

Appellant furthers the same argument on appeal. He once again contends that the Government's conduct was sufficiently outrageous to justify dismissal of all the charges in his case. We are not persuaded. At the outset of their correspondence, "Tina" informed Appellant that she was only 14 years old. Despite this, Appellant willingly sent "Tina" sexually explicit messages and two unrequested photographs of his penis. The record indicates he did so not because he was coerced or fearful, but in order to gratify his sexual desires. The arguably salacious nature of "Tina's" Craigslist advertisements and further communications did not coerce Appellant's behavior, and it fails to outrage or shock the judicial conscience to the point of establishing a due process violation.

### 3. **Defense Proposed Instruction**

The military judge denied the Defense request for its proposed instruction "consistent with note four" of the Military Judge's Benchbook Instruction 5-6 (entrapment), that if the members found a "due-process violation [as] a result of shocking police abuses that have been outrageous, fundamentally unfair and shocking to the universal sense of justice" that "they can acquit on that notion." The judge did instruct the members on entrapment.[7]

"Military judges have substantial discretionary power to decide which instructions to give panel members." *United States v. Gurney*, 73 M.J. 587, 598 (A.F. Ct. Crim. App. 2014). Whether a panel is properly instructed is a question of law reviewed de novo. *United States v. Killion*, 75 M.J. 209, 214 (C.A.A.F. 2016).

"A military judge must instruct panel members on any affirmative defense that is 'in issue.'" *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011) (quoting R.C.M. 920(e)(3)). "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" R.C.M. 920(e), Discussion. Relying on authority from the Supreme Court, our superior court has stated that "'some evidence' entitling an accused to an instruction, has not been presented until 'there exists evidence sufficient for a reasonable jury to find in [the accused's] favor.'" *Schumacher*, 70 M.J. at 389 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The *Schumacher* court further explained: "[T]he military judge must answer the legal question of whether there is *some evidence* upon which members could reasonably rely to find that each element of the defense has been established. This test is similar to that for legal sufficiency." *Schumacher*, 70 M.J. at 389–90 (emphasis added).

---

[7] Defense did not object to this instruction.

The record does not disclose outrageous police misconduct. The trial judge appropriately answered the legal question that the affirmative defense of due process entrapment had not been established. Such a legal question should not be posed to the members in an instruction or otherwise. Accordingly, we find the military judge did not err in deciding not to give the instruction.

### III. CONCLUSION

The approved findings and sentence are correct in fact and law, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court