# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Chief Master Sergeant WILLIAM C. GURNEY**
**United States Air Force**

**ACM 37905 (recon)**

**\_\_\_\_ M.J. \_\_\_\_**

**10 February 2014**

Sentence adjudged 28 January 2011 by GCM convened at Scott Air Force Base, Illinois. Military Judge: W. Thomas Cumbie.

Approved Sentence: Bad-conduct discharge, confinement for 4 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama (argued); Lieutenant Colonel Jane E. Boomer; Major Daniel E. Schoeni; and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Major Charles G. Warren (argued); Colonel Don M. Christensen; and Gerald R. Bruce, Esquire.

*En Banc*

ROAN, ORR, HELGET, HARNEY, HECKER, MARKSTEINER, MITCHELL, WEBER, WIEDIE, and PELOQUIN
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final publication.

HARNEY, Senior Judge, delivered the opinion of the Court, in which ROAN, Chief Judge, ORR, Senior Judge, HELGET, Senior Judge, MARKSTEINER, Judge, and PELOQUIN, Judge join. WEBER, Judge, filed an opinion concurring in result, in which MITCHELL, Judge, HECKER, Judge, and WIEDIE, Judge, join.

HARNEY, Senior Judge:

At arraignment before a general court-martial, the appellant entered mixed pleas. The military judge accepted his pleas of guilty to: (1) seven specifications of willful dereliction of duty by failing to maintain professional relationships; (2) one specification of violating a lawful general regulation by using government equipment for other than official business; (3) one specification of indecent conduct; and (4) four specifications of adultery; in violation of Articles 92, 120, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 934. Contrary to his pleas, a panel of officers convicted the appellant of two specifications of maltreatment of subordinates in violation of Article 93, UCMJ, 10 U.S.C. § 893.[1] The members sentenced him to a dishonorable discharge, confinement for 20 months, and reduction to E-1. The convening authority approved only a bad-conduct discharge, confinement for 4 months, and reduction to E-1.

On appeal, the appellant raised three issues for our review: (1) The military judge's denial of a requested instruction on mistake of fact as to consent as a defense to maltreatment; (2) The sufficiency of the guilty plea to violating a lawful general regulation; and (3) The appropriateness of the sentence. On 16 May 2013, we issued a *per curiam* decision affirming the findings and sentence of the court-martial. *United States v. Gurney*, ACM 37905 (A.F. Ct. Crim. App. 16 May 2013) (unpub. op.). On 23 May 2013, this Court issued an order that it was reconsidering the decision in the appellant's case based upon the panel composition. Notice of Reconsideration (A.F. Ct. Crim. App. May 23, 2013). On 23 July 2013, we issued our opinion upon reconsideration, again upholding the findings and sentence. *United States v. Gurney*, ACM 37905 (A.F. Ct. Crim. App. 23 July 2013) (recon) (unpub. op.).

On 22 August 2013, the appellant requested en banc reconsideration, arguing the Court erred in finding that mistake of fact as to consent is not an affirmative defense to the offense of maltreatment of a subordinate. Over Government objection, we granted the appellant's reconsideration request and heard oral argument en banc on 13 November 2013.

We find under the facts of this case that the military judge did not err when he declined to instruct the members that mistake of fact as to consent is a defense to maltreatment. We further find his guilty plea to violation of a lawful general order provident and his sentence appropriate.

---

[1] The members acquitted the appellant of one specification of wrongful sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920; and two specifications of misusing his official position, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

*Mistake of Fact as to Consent as a Defense to Maltreatment*

## I. Background

The appellant was charged with, and pled not guilty to, maltreating two Senior Airmen. Charge II, Specification 1, alleged the appellant maltreated Senior Airman (SrA) AR (now Staff Sergeant AG)[2] "by making deliberate and repeated offensive comments of a sexual nature to her, and by pursuing a personal sexual relationship with her." Charge II, Specification 2, alleged the appellant maltreated SrA CH "by making deliberate and repeated offensive comments of a sexual nature to her, by sending her semi-nude images of [himself] to her, and by pursuing a personal sexual relationship with her."

The appellant argues the military judge erred by denying the trial defense counsel request to instruct the members that mistake of fact as to consent can be a defense to maltreatment. The Government disagrees. We hold the military judge did not err when he denied the request to instruct the members that mistake of fact as to consent is an affirmative defense to maltreatment of a subordinate under Article 93, UCMJ.

## II. Testimony of Senior Airman AR

Both victims testified at the court-martial. SrA AR met the appellant, a Major Command Chief Master Sergeant, in January 2008 at a private party following an event sponsored by the Air Force Sergeant's Association. At the time, SrA AR was assigned to Wright-Patterson Air Force Base (WPAFB). After the party, the appellant sent her a message at work over Instant Messenger[3] and they began to chat. The topics ranged from SrA AR asking the appellant for professional advice to talking about the appellant's wife and children. SrA AR explained that she had become friends with the appellant's wife through volunteer work and had cared for their children once or twice.

In November 2008, the appellant began to send SrA AR text messages. The text messages started out as professional, and SrA AR testified that she viewed the appellant as a mentor. She stated the messages from the appellant later became more flirtatious; he told her she was pretty and attractive and stated he thought she worked out a lot. SrA AR stated that, at first, she was flattered, and in her experience it was not "unusual for a senior enlisted member to make borderline flirtatious comments with female airmen." As the texting continued, the appellant told SrA AR that she was "sexy" and would "like to see his face between [SrA AR's] thighs." During one text exchange, the appellant asked

---

[2] At the time of the offense, Staff Sergeant AG was Senior Airman (SrA) AR. By the time of trial, she had been promoted and was married.
[3] SrA AR described Instant Messenger as a chatting system available on work computers within the Major Command (MAJCOM).

SrA AR if she had ever been with another woman. She replied "no" and stated the only other time she had been asked that question she had "punched" her friend in the face. The appellant sent SrA AR other texts of a sexual nature and called her his "fantasy girl." She responded to some texts, but did not, to her recollection, reciprocate the sexual message. He also asked for photographs of her "abs" and body. Although uncomfortable with the request, SrA AR sent him photos of her "abs" to maintain a good relationship with him. After doing so, however, she felt guilty and ashamed. She distanced herself from him and slowed her responses to his text messages.

During her testimony, SrA AR described one particular day in February 2009 when she was driving to meet her boyfriend for lunch. She received 8-10 text messages and approximately 15 phone calls from the appellant during the six-minute drive from her house to the base. Feeling aggravated, she eventually pulled over and called the appellant. In a loud voice, she told him she did not want to talk to him anymore, to stop texting and calling her, and to leave her "the hell alone." As the conversation escalated, the appellant got angry with SrA AR and said, "You know, is this how you talk to your senior leaders? You're cussing at me now?" She responded that he was acting "so f***ing immature," that she had tried to talk to him nicely but he would not listen, and so she had to talk to him "like a little f***ing kid." He told her she was "being really unbecoming of an airman" and needed to stop yelling because "[h]e's the chief." The conversation ended with SrA AR telling the appellant she wanted to keep their relationship professional.[4] After this exchange, the appellant stopped sending her sexually-themed text messages.

During cross-examination, SrA AR explained that while she did not expressly tell the appellant she was offended by his actions until that argument, she was not responding to all his text messages. By ignoring his texts, she believed a reasonable person would have understood she did not want to talk to him. She stated that even though she was offended, she "played along" with the appellant's text messages because she "didn't want [her] career to be hurt by burning a bridge so high up there. . . . so [she] just went along with it."[5] She explained, "I was just trying to keep him where he knew that I wasn't – like he didn't think I was mad at him or anything, that we still had a good relationship."

### III. Testimony of Senior Airman CH

---

[4] In June 2009, SrA AR applied for the administrative assistant position in the appellant's office. She was not selected for the position.

[5] SrA AR further explained:

> You know, if you play with fire, you're going to get burned, so I preferred not to find out what would happen if I – if I made him mad . . . You know, at this point in my career, I wasn't willing to take a risk of finding out if I didn't do what he wanted me to do what would happen, so I just went along with it.

Senior Airman CH joined the Air Force in May 2006. She met the appellant approximately 1.5 years later in San Antonio while she was assigned to Brooks City-Base. SrA CH knew the appellant because he became involved with their family after her brother died during an incentive flight that crashed in Italy. In June 2009, the appellant obtained SrA CH's phone number from her mother. He then called SrA CH to discuss a possible humanitarian assignment to WPAFB so she could be closer to her family, something SrA CH wanted. During that conversation, the appellant asked if he could text SrA CH. She agreed and started receiving texts within 1-2 hours. The texts quickly became sexual when the appellant asked SrA CH if he could ask her a personal question and asked what her favorite sexual position was. She did not immediately respond, but eventually replied that she did not have a favorite position and "just loved sex." The appellant then proceeded to tell SrA CH his favorite sexual positions.

The texting between SrA CH and the appellant went on for months, and sometimes SrA CH would "just delete them [text messages] as they were coming through" because she was shocked by what the appellant was sending her. When asked why she nevertheless responded to the texts, SrA CH explained, "Because I was really hoping to get a humanitarian, and I didn't want to offend him." SrA CH sent the appellant pictures of her face, breasts, and buttocks. When asked why, she explained, "The chief told me if I helped him that he could help me."

In early August 2009, SrA CH was on leave to see her family in the vicinity of WPAFB. The appellant contacted her and asked if she would like to meet in his office to discuss the humanitarian assignment. SrA CH agreed. Prior to the meeting, the appellant asked SrA CH if she would like to keep the meeting "on a professional level," and she responded affirmatively. He invited her to meet at 0600, when no one else would be in the office, but she declined. Instead they met around 0800-0830. Not wanting to meet with the appellant alone, SrA CH brought her mother and nephew to the meeting.

After some time, the appellant asked SrA CH's mother and nephew to leave the meeting, ostensibly so he could discuss "personal information" with SrA CH. After they left, the appellant began rubbing SrA CH's thigh. She pulled away and they stood up. The appellant then hugged her for approximately thirty seconds while she stood with her hands to her sides. While hugging her, he grabbed her buttocks but she elbowed his arm away. The appellant asked SrA CH what underwear she was wearing, tried to kiss her (she turned her head away), and then used his hands to make an outline of his penis. He asked if she wanted to take a picture of his penis on her cell phone, and she told him no. The appellant then asked if she wanted to have sex with him on his desk. She asked, "Don't you think somebody would hear us?" and told him no. As she was leaving the office, he told her, "I'd really appreciate it if we kept this between us two."

After the meeting, the appellant contacted SrA CH's mother to set up a dinner at his house for the same night. SrA CH tried to get out of the party, including by lying to

her mother about being stuck in traffic. But eventually she attended the party with her mother, father, two-year-old nephew, the appellant, his wife, and his daughters. At one point during the party, while SrA CH was changing her nephew's diaper, the appellant put his hands down the back of her pants and grabbed her buttocks. She walked away to throw away the diaper, and he blocked her return, requiring SrA CH to duck under his arm through a doorway. Later, SrA CH chased her nephew upstairs into the appellant's daughter's room. He followed her up the stairs and into the room, where he put both of his hands on the wall above her. While SrA CH was holding her nephew, the appellant reached down and grabbed her buttocks, and when she put her nephew down the appellant grabbed her breast. SrA CH "was mad…[and thought] the chief could tell on [her] face that it was unwelcomed."

In mid-August 2009, SrA CH returned to the WPAFB area to attend a memorial and road dedication in honor of her brother. The appellant invited her to meet him in his office again. She told him "no," but he continued to text her "a lot asking [her] if she was sure" she did not want to go to his office. She continued to decline. When she attempted to limit their text conversations, he became irritated with her and kept asking why she was not responding to his texts. At one point, the appellant texted SrA CH asking, "Did you go out last night, get drunk, and f*** somebody?" SrA CH replied, "Chief, I don't know who the f*** you think I am, but I'm not that kind of f***ing person." He asked if their relationship was over, and she responded, "[W]hat type of relationship are you talking about, because I've always tried to keep it as a professional relationship."

Later that month, the appellant traveled to Brooks City-Base to talk to SrA CH and her leadership about the humanitarian assignment. He set up a meeting and told SrA CH via email that two other Chief Master Sergeants in her chain of command would be there. When she arrived at the meeting, however, she found herself alone with the appellant. He asked about her mother, gave her a hug, and grabbed her buttocks. When she pulled away, he invited her to go out for a drink. She declined. He then informed her that he could not get her a humanitarian assignment to WPAFB, but might be able to move her to the WPAFB area early for other reasons.

During this time, SrA CH asked the appellant on several occasions to keep things on a professional level. In late-August or early-September 2009, the appellant began sending her explicit text messages again. She told him to stop because a friend had seen a text. She then stopped texting him completely. He stopped for a time, but began again in October 2009, when CH received up to 30 texts a day. She became afraid of what might happen and did not even leave her house when she knew he was in town. He eventually sent her a text telling her that if she did not text him back, "he would go through official means to get to [her]."

On cross-examination, SrA CH admitted that although the appellant sent her a text that said "[i]f I get too flirtatious for you, tell me," she never told him he was acting in

such a way.  She instead stated, "I did tell him a couple times that I wanted to keep it professional, but I did not want to offend the chief."  SrA CH felt that she had given him the message during the meeting in his office that she did not welcome his conduct.  When trial defense counsel explored this subject, the following exchange occurred:

Q:  You knew, based on your communications with the chief, sending him these pictures and texts . . . you believed that he actually misperceived your intentions.  Is that right?

A:  Yes, ma'am.

Q:  So you also believed that he thought you were reciprocating when, in your mind, you actually were not.

A:  Yes, ma'am.

On re-direct examination, trial counsel attempted to clarify CH's testimony:

Q:  What did you mean . . . when you sent those photos and you said that you thought maybe he thought you were reciprocating? . . . You thought that he believed that you wanted that physical contact, or you thought he thought you wanted a text?

A:  Just a text.

. . . .

Q:  Why didn't you stand up to [the appellant]?

A:  Because he's a chief.

IV. Appellant's Confession

The appellant did not testify at trial.  However, he did give a statement to the Air Force Office of Special Investigations on 16 November 2009, which was introduced at trial.  In his confession, the appellant stated he engaged in "sexting" with SrA CH, that she sent him pictures of her breasts and buttocks, and that he had sent her photos of himself both nude and semi-nude.  The appellant stated he knew SrA CH wanted a humanitarian assignment, but denied telling her he had the authority to get her such an assignment or that he expected any sexual favors from SrA CH in return for helping her.  The appellant stated he and SrA CH shared a "mutual" hug and kiss in his office and denied ever touching her buttocks or breasts or touching her underneath her clothes.  He

admitted that, in hindsight, he "crossed a line" and "should have seen this train wreck coming." The appellant did not mention his interactions with SrA AR in his confession.

## V. Ruling of the Military Judge on Proposed Instruction

After the parties rested, the military judge provided them copies of the proposed instructions he intended to provide the court members. Trial defense counsel objected and asked the judge to instruct that mistake of fact as to consent is a defense to maltreatment under Article 93, UCMJ. The military judge denied the defense request for such an instruction. Noting that this is an "unsettled area of the law," the judge reasoned that because the offense of maltreatment is viewed objectively, consent or mistake of fact as to consent is not controlling: "[The] response of the alleged victim to the accused's conduct is not controlling in determining objectively whether maltreatment occurred, and likewise, mistakes by the superior as to the receptiveness or consent of the victim is not controlling in determining whether the maltreatment occurred." The military judge did, however, instruct the members that they were to consider evidence of consent or acquiescence of the alleged victims to the appellant's actions: "The fact that [SrA AR] and [SrA CH] may have consented or acquiesced does not alone prove that she was not maltreated. It is but one factor to consider in determining whether the accused maltreated, oppressed, or acted cruelly towards either [SrA AR] or [SrA CH]."

## VI. Other Instructions

The military judge instructed the members that mistake of fact as to consent could provide a defense to Specification 2 of Charge III, which alleged wrongful sexual contact with SrA CH. The instruction provided:

> The evidence has raised the issue of mistake of fact on the part of the accused as to whether Senior Airman [CH] consented to the sexual contact. Mistake of fact as to consent is a defense to the charged offense. Mistake of fact as to consent means that the accused held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented.
>
> Ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all of the circumstances. To be reasonable, the ignorance or mistake must have been based on information or lack of it which would indicate to a reasonable person that the other person consented. Additionally, ignorance or mistake cannot be based on the negligent failure to discover the true facts.

Negligence is simply the absence of due care.  Due care is what a reasonably careful person would do under the same or similar circumstances.

The prosecution has the burden of proving beyond a reasonable doubt that the mistake of fact as to consent did not exist.  If you are convinced beyond a reasonable doubt that at the time of the charged offenses, the accused was not under the mistaken belief that the alleged victim consented to the sexual contact, the defense does not exist.  Even if you conclude that the accused was under the mistaken belief that the alleged victim consented to the sexual contact, if you are convinced beyond a reasonable doubt that at the time of the charged offense, the accused's mistake was unreasonable, then the defense does not exist.

During deliberations, the members asked whether, in determining consent for purposes of wrongful sexual contact, military rank and position could be considered in deciding whether consent was freely given.  During a session to address this question, the President of the court-martial panel also stated that the members were struggling with the definition of "reasonable" under Article 120, UCMJ, as applied to mistake of fact as to consent.  After clarifying the issue with the President of the court-martial panel, the military judge provided the following guidance:

I don't know that this will satisfactorily answer your question, but I'm not sure I can answer it any better. In order to answer that question, I think the question that one would ask is would a reasonably prudent person under the same or similar circumstances have believed that Senior Airman [CH] consented.  I know that's a question.  You know, is that a reasonable chief, or is that a reasonable forty-seven year old man, or is that a reasonable man or a reasonable woman, so you can't answer that because who's to say what a − you know, that two chiefs think the same way or that two males think the same way or that two females think the same way, so I mean it is just a reasonably prudent person, whatever that might mean, under the same or similar circumstances, would they have believed she consented?  I'm not sure that helps, but I think it's probably the best I'm going to be able to do.

The military judge then provided additional guidance regarding consent, military rank, and position for purposes of mistake of fact:

Now in answer to your question about using military rank and position. I'm not sure this will give you an answer, but I think it's probably the best we can do.  If the alleged victim consented to the act in question, it is not wrongful sexual contact.  The lack of consent required, however, is more than the mere lack of acquiescence.  If a person who is in possession of her

mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance that are called for by the circumstances, then the inference may be drawn that she consented. Consent, however, may not be inferred if resistance would have been futile under the totality of the circumstances or where resistance is overcome by intimidation or a reasonable fear of death or grievous bodily harm. You may consider all of the surrounding circumstances in deciding whether [SrA CH] consented.

There is evidence which, if believed, indicates that the accused used his military rank and position in order to coerce [SrA CH] to consent to his advances. You may consider this evidence in deciding whether [SrA CH] had a reasonable belief that death or great bodily harm would have been inflicted on her or that resistance would have been futile under the totality of the circumstances. This evidence is also part of the surrounding circumstances you can consider in deciding whether [SrA CH] consented to the sexual contact.

The members acquitted the appellant of wrongful sexual contact with SrA CH, but found him guilty of maltreatment of both SrA CH and SrA AR.

## VII. Maltreatment

The propriety of a trial judge's instruction is a question of law we review de novo. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011); *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010); *United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001).

The offense of maltreatment under Article 93, UCMJ, requires proof of two elements: (1) the victim was subject to the orders of the appellant; and (2) the appellant was cruel toward, oppressed, or maltreated the victim. *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 17.b. (2008 ed.). The nature of the act constituting a maltreatment offense is defined as follows:

The cruelty, oppression, or maltreatment, although not necessarily physical, *must be measured by an objective standard*. Assault, improper punishment, and sexual harassment may constitute this offense. Sexual harassment includes influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors, and deliberate or repeated offensive comments or gestures of a sexual nature.

*MCM*, Part IV, ¶ 17.c.(2) (emphasis added).

Thus, a showing of actual physical or mental harm is not required to prove maltreatment under Article 93, UCMJ. Rather, it is "only necessary to show, as measured from an objective viewpoint in light of the totality of the circumstances, that the accused's actions reasonably could have caused physical or mental harm or suffering." *United States v. Carson*, 57 M.J. 410, 415 (C.A.A.F. 2002). Maltreatment, however, is not a "strict liability offense punishing all improper relationships between superior and subordinates." *United States v. Fuller*, 54 M.J. 107, 111 (C.A.A.F. 2000), *overruled on other grounds by United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009). "The essence of the offense is abuse of authority." *Carson*, 57 M.J. at 415. An individual of superior rank who takes advantage of that position may subject his subordinates to maltreatment, regardless of his intent. *United States v. Hanson*, 30 M.J. 1198, 1201 (A.F.C.M.R. 1990), *aff'd*, 32 M.J. 309 (C.M.A. 1991) (mem.); *see also Fuller*, 54 M.J. at 111 (noting that superior-subordinate relationships can create a "unique situation of dominance and control.").

Judicial consideration of maltreatment has largely focused on the legal and factual sufficiency of the evidence or proof necessary to uphold a conviction under an objective standard. *See Carson*, 57 M.J. at 415 (holding that court of criminal appeals appropriately reviewed maltreatment conviction for legal and factual sufficiency under an objective standard); *Fuller*, 54 M.J. at 111-12 (holding evidence legally insufficient for maltreatment conviction based on consensual sexual relations); *United States v. Goddard*, 54 M.J. 763, 767 (N.M. Ct. Crim. App. 2000) (finding evidence legally and factually insufficient to prove maltreatment in light of consensual sexual relationship), *aff'd*, 55 M.J. 149 (C.A.A.F. 2001) (mem.); *United States v. Rutko*, 36 M.J. 798, 801 (A.C.M.R. 1993) (finding evidence legally and factually sufficient to uphold conviction for maltreatment when superior used his military position to induce soldiers to commit unwanted sexual acts), *abrogated on other grounds by United States v. Carson*, 55 M.J. 656 (Army Ct. Crim. App. 2001); *Hanson*, 30 M.J. at 1201 (finding the totality of the appellant's actions supported his conviction for maltreatment). Neither our superior court nor our sister service courts have squarely addressed whether mistake of fact as to consent is a defense to maltreatment.

Maltreatment is a general intent crime. *Hanson*, 30 M.J. at 1201 (citing *United States v. Piatt*, 17 M.J. 442, 445 (C.M.A. 1984)). A mistake-of-fact defense, when applied to a general intent crime, has both a subjective (honest) and objective (reasonable) prong. *United States v. Hibbard*, 58 M.J. 71, 72 (C.A.A.F. 2003); *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995). The ignorance or mistake of fact must have existed in the mind of the appellant at the time of the offense and, based on the totality of the circumstances, the mistake must have been reasonable. *Hibbard*, 58 M.J. at 72 (citing Rule for Courts-Martial (R.C.M.) 916(j)). Stated another way, the appellant's mistaken belief must be both subjectively honest and objectively reasonable under the circumstances. *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998). Any doubt whether an instruction should be given should be resolved in favor of the accused.

*United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). *See also United States v. Zachary*, 63 M.J. 438, 442 (C.A.A.F. 2006) ("It is a basic principle of criminal law that an honest and reasonable mistake of fact can negate the mens rea requirement to a general intent crime.").

"A military judge is required to instruct members on any affirmative defense that is 'in issue,' and a matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" *United States v. Stanley*, 71 M.J. 60, 61 (C.A.A.F. 2012) (quoting *United States v. Lewis,* 65 M.J. 85, 87 (C.A.A.F. 2007)); *see also* R.C.M. 920(e). Some evidence can be raised "by evidence presented by the defense, the prosecution, or the court-martial." *Hibbard*, 58 M.J. at 73 (quoting R.C.M. 916(b), Discussion).

To resolve this issue before us, we must answer two questions: (1) whether mistake of fact can be an affirmative defense to maltreatment under Article 93, UCMJ; and (2) if so, whether some evidence was raised in this case that required the military judge to instruct the members on mistake of fact as to consent as an affirmative defense.

VIII. Whether Mistake of Fact as to Consent Can Be a Defense to Maltreatment

The first question we must address is whether mistake of fact as to consent is an affirmative defense to the offense of maltreatment under Article 93, UCMJ. The Government argues that consent is but one factor to consider when objectively evaluating maltreatment and that mistake of fact as to consent is not an affirmative defense. The appellant disagrees. Both sides offer credible arguments and citations to support their respective positions. We conclude that mistake of fact as to consent can be a defense to maltreatment.

The appellant argues that mistake of fact as to consent is an affirmative defense to maltreatment and that our previous decision holding to the contrary conflicts with our superior court's decision in *United States v. Garcia*, 44 M.J. 496 (C.A.A.F. 1996). In *Garcia*, the appellant pled guilty to maltreatment under Article 93, UCMJ. During the providency inquiry, the appellant stated that at the time of his various acts with two female subordinates, he believed they had consented to his actions. Upon further questioning, the military judge found the appellant's pleas provident. This Court disagreed and set aside the findings and sentence. *United States v. Garcia*, 43 M.J. 686 (A.F. Ct. Crim. App. 1995). In reaching this result, we noted that maltreatment must be measured from an objective standard, and to determine if the objective standard has been violated we "must look to all the facts and circumstances of the incidents." *Id.* at 690. In so doing, we concluded it would be "objectively unreasonable" to find the accused guilty of maltreatment when the victim "freely and voluntarily consented" to the conduct: "Since appellant insisted that, at the time of offenses, he thought the women were

consenting, the military judge should have rejected his plea" to the maltreatment offenses. *Id.*

On review, our superior court ruled that the appellant's pleas were provident. It noted that during the providency inquiry the military judge set forth the elements of the offenses to which the appellant offered to plead guilty and obtained the appellant's assurances that they accurately described what he had done. This inquiry, our superior court observed, adequately established a factual basis supporting each element of the offense. "Without more," it stated, "[the appellant's] pleas would be provident." *Garcia*, 44 M.J. at 498. Our superior court recognized, however, that "there was more" because the appellant averred that at the time of his actions he believed the victims had consented.

In addressing this issue, our superior court first stated that maltreatment is a general intent crime, and, as such, "a successful mistake-of-fact defense must include not only a subjective belief of consent but also a belief that was reasonable under all the circumstances." *Id.* (internal quotation marks omitted) (citing R.C.M. 916(j)). Second, it observed that the appellant's providency inquiry did not contain any claim that his mistaken belief as to consent was objectively reasonable, nor did the factual circumstances described by the appellant suggest his subjective belief was reasonable. *Id.* at 498-99. Finding the appellant's pleas provident, our superior court concluded:

> In this light, we conclude that a mistake-of-fact defense was never raised by [the appellant]. Therefore, there was no necessity for [the appellant] expressly to disavow the objective reasonableness of his subjective belief in order to maintain his pleas—*although a more probing inquiry by the military judge into the possibility of an affirmative defense* and findings entered by the judge on the record would have provided a record that was free from even arguable error.

*Id.* at 499 (emphasis added).

Addressing *Garcia*, the Government argues that our superior court did not squarely hold that mistake of fact as to consent is an affirmative defense for violations of Article 93, UCMJ. Rather, it argues, our superior court restricted its ruling to a providency analysis, finding no substantial basis in fact to undermine the sufficiency of the plea. The Government further argues that, to the extent our superior court's decision could be interpreted to find that mistake of fact as to consent is an affirmative defense to maltreatment, the language is non-binding dicta. The Government asserts that our superior court did no more than "perhaps presume" mistake of fact as to consent was relevant to the guilty plea for maltreatment without being asked to decide the predicate question of whether mistake of fact as to consent did constitute an affirmative defense to maltreatment. Finally, the Government argues that our superior court's focus was limited to the providency of the plea because The Judge Advocate General of the Air Force only

certified the specific question of whether this Court had erroneously decided that the pleas were improvident.

Relying on *United States v. Fuller*, 54 M.J. 107 (C.A.A.F. 2000), *overruled on other grounds by United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009), the Government argues the position adopted by the military judge in this case: consent is but one factor to consider when objectively evaluating maltreatment and mistake of fact as to consent is not an affirmative defense. *Fuller* involved consensual sexual relations between a noncommissioned officer and a subordinate. The issue before our superior court was the legal sufficiency of the evidence supporting the appellant's conviction for maltreatment. After viewing the totality of the circumstances from an objective viewpoint, our superior court found the evidence legally insufficient to support the appellant's convictions for maltreatment. *Id.* at 112. The Court took into account several factors in reaching this conclusion, such as the superior-subordinate relationship between the appellant and the alleged victim; the consensual nature of the relationship; the lack of evidence showing the appellant used or threatened to use his position to coerce the alleged victim into having sexual intercourse with him; the lack of evidence of a coercive training environment; the lack of evidence the alleged victim felt unable to resist the appellant's actions; and the lack of evidence showing the victim showed any visible signs of intoxication or that the appellant knew she was intoxicated. *Id.* at 110-11. The Government asserts that such a contextual analysis is proper when evaluating maltreatment and, as in *Fuller,* consent in this appellant's case was one factor to consider in evaluating his actions. Thus, the Government argues the military judge did not err.

We find that mistake of fact as to consent can be an affirmative defense to the offense of maltreatment under Article 93, UCMJ. We reject the Government's argument that our superior court's discussion of the mistake-of-fact defense in *Garcia* is non-binding dicta. We also reject the argument that *Garcia* is limited to the providency of the plea because The Judge Advocate General of the Air Force only certified the specific question of whether this Court had erroneously decided that the pleas were improvident. To address the providency of the pleas, our superior court necessarily analyzed the facts before it to decide if the appellant had raised a defense of mistake of fact as to consent that rendered his pleas improvident. The analysis focused on the general intent nature of maltreatment and the subjective and objective prongs of the mistake-of-fact defense. Our superior court then applied the facts to the law, concluded that the appellant had not raised the mistake-of-fact defense sufficient to satisfy the subjective and objective prongs of the defense, and found his pleas provident.

We cannot ignore the language and analysis in *Garcia* on the issue of mistake of fact as to consent as applied to maltreatment. Although *Garcia* did not specifically hold that mistake of fact as to consent could be a defense to maltreatment, the language in the opinion does not implicate dicta. Rather, implicit in the opinion is a reasonable conclusion that the defense of mistake of fact as to consent is available to the general

intent crime of maltreatment. Our decision today fills the gap in *Garcia* by holding that mistake of fact as to consent can be a defense to maltreatment.


IX. Whether the Military Judge was Required to Instruct on Mistake of Fact as to Consent

Having concluded that mistake of fact as to consent can be a defense to maltreatment, we next address whether there was "some" evidence in this case that required the military judge to instruct the members on mistake of fact as to consent as an affirmative defense. We answer this question in the negative.

Military judges have substantial discretionary power to decide which instructions to give panel members. Whether a panel is properly instructed is a question of law reviewed de novo. *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). A military judge must instruct panel members on any affirmative defense that is "in issue." R.C.M. 920(e)(3); *Stanley*, 71 M.J. at 63; *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011). "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (quoting R.C.M. 920(e), Discussion). Relying on authority from the Supreme Court, our superior court has stated that "'some evidence' entitling an accused to an instruction, has not been presented until 'there exists evidence sufficient for a reasonable jury to find in [the accused's] favor.'" *Schumacher*, 70 M.J. at 389 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The *Schumacher* Court further explained: "[T]he military judge must answer the legal question of whether there is *some evidence* upon which members could reasonably rely to find that *each element of the defense has been established*. This test is similar to that for legal sufficiency." *Schumacher*, 70 M.J. at 389-90 (emphasis added).

R.C.M. 916(j) provides for the defense of mistake of fact:

[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense . . . If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

Thus, the defense of mistake of fact as to consent for maltreatment, as a general intent crime, requires a mistake that is both honest and reasonable. In this case, the appellant must have subjectively believed that SrA AR and SrA CH welcomed his

conduct and there must be some evidence showing that his belief was reasonable under the circumstances.

We find some evidence exists to show the appellant held a subjective belief that the victims welcomed his conduct, and upon which the members could reasonably rely, without regard to its source or credibility. For example, SrA CH testified that she believed the appellant thought she was reciprocating his interest in their exchange of text messages. In addition, SrA CH sent the appellant photographs of her buttocks and breasts. And, the appellant told investigators that he believed the hug and kiss with SrA CH in his office was mutual. Likewise, SrA AR testified that she attempted to give the impression that his text messages did not offend her and she chose to "play along" with the text messaging.

We do not find any evidence, however, upon which the members could rely showing that the appellant's belief was objectively reasonable under the facts of this case. The appellant outranked SrA CH and SrA AR. He was an E-9 senior enlisted leader; they were E-4 junior enlisted personnel. The appellant was a Major Command Chief Master Sergeant; SrA CH and SrA AR were among the enlisted personnel in that Major Command. The appellant occupied a position of authority and respect at the time he queried these junior enlisted members about their sex lives. Moreover, the appellant initiated the contact with both victims. In both cases, the appellant sent them sexually explicit text messages and asked for and received nude photographs from SrA CH and semi-nude photographs from SrA AR. Both victims testified that they did not tell the appellant that his conduct offended them because of his position and out of concern for their careers. Under the facts of this case, we find the appellant's mistaken belief that SrA CH and SrA AR consented to his conduct was not objectively reasonable.

Accordingly, we conclude that the appellant has not raised a mistake-of-fact defense. The record does not contain "some" evidence to satisfy each element of the defense. Thus, the military judge did not abuse his discretion when he did not instruct the members on mistake of fact as to consent.

Even if the military judge had erred in failing to instruct the members on mistake of fact as to consent, we are convinced that the error was harmless beyond a reasonable doubt and did not contribute to the appellant's conviction.

Failure to provide a required instruction is constitutional error reviewed to determine whether that error was harmless beyond a reasonable doubt. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). The test is: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18 (1999). When conducting a harmless error analysis, this Court looks at the entire record and all the circumstances to determine "whether the error had or reasonably may have

had an effect upon the members' findings." *United States v. Hall*, 58 M.J. 90, 94 (C.A.A.F. 2003) (quoting *United States v. Bins*, 43 M.J. 79, 86 (C.A.A.F. 1995)) (internal quotation marks omitted). The Government bears the burden of showing that a constitutional error is harmless beyond a reasonable doubt. To meet that burden, the Government must show there is "no reasonable possibility" that the error "contributed to the contested findings of guilty." *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007).

The appellant relies on *United States v. DiPaola*, 67 M.J. 98 (C.A.A.F. 2008) to argue that the Government cannot show that the military judge's failure to give the mistake-of-fact instruction was harmless beyond a reasonable doubt. In *DiPaola*, the appellant and another military member had an on-again, off-again sexual relationship. During one encounter, the appellant told the victim he wanted to have sex with her; she said she did not want to. He persisted, but she continued to say no. Despite her protestations, they began kissing and "making out," eventually moving to her bed. The victim allowed the appellant to remove her shirt, after which he began kissing and biting her breasts. When she told him not to bite her breasts, he stopped.

The appellant then grabbed the victim's wrists and held them down on the bed above her head. He unzipped the victim's pants, but she got a hand loose and pulled up her zipper. He continued to ask for sex; she continued to say no. At one point, the appellant offered the victim such things as marriage, children, and his car in exchange for sex, which she found amusing. They both laughed during this exchange. The appellant proceeded to rub the victim's crotch area and, while clothed, rubbed his erect penis over her clothed vaginal area. This position hurt her wrists and legs, and she finally pushed the appellant off the bed. The appellant pulled out his penis and began stroking it with his hand. He asked the victim for oral sex; she said no. The appellant finally understood that she was not going to have sex with him and left the room. *Id.* at 100.

The appellant was charged with specifications of indecent assault and indecent exposure. The military judge declined to give the mistake-of-fact instruction for the indecent assault specifications (kissing and biting her breasts, holding her down by her wrists, sitting and lying on top of her, and rubbing his erect penis against her vaginal area), but gave the instruction for the indecent exposure specifications (removing his penis from his pants after the events on the bed occurred). The appellant was convicted of the indecent assault specification but acquitted of the indecent exposure specification. *Id.* at 102-03. Our superior court held that the absence of the mistake-of-fact instruction for indecent assault was not harmless beyond a reasonable doubt "because the instruction resulted in a finding of not guilty when given with respect to another charge involving the same victim in the same setting." *Id.* at 102.

The appellant argues that *DiPaola* controls the outcome in this case because the military judge instructed that mistake of fact as to consent applied to the wrongful sexual

contact specification that named SrA CH, but did not instruct on that defense for the maltreatment specification that also named SrA CH. The appellant argues that both offenses involved the same victim in the same setting, thus requiring reversal.

We agree that in this case the charges involve the same victim, SrA CH. We disagree, however, that the charges involve the same setting. In *DiPaola*, the victim consented to some, but not all of the appellant's conduct during a single encounter encompassing both the indecent assault and indecent exposure charges. The Court found this "mixed message" was sufficient to raise mistake-of-fact for the indecent assault charge. Unlike *DiPaola*, the appellant's maltreatment of SrA CH consisted of facts different than those for the wrongful sexual contact. The appellant's maltreatment of SrA CH involved his pursuit of the sexual relationship with SrA CH, shown by the repeated communications via text messages ("sexting") and him sending her semi-nude photos of himself. Conversely, the wrongful sexual contact centered on the appellant touching the breasts and buttock of SrA CH, and kissing her. Moreover, the time period for the maltreatment specification covered a much broader period (on or about 1 July 2009 to on or about 13 November 2009) than for the wrongful sexual contact specification (on or about 1 August 2009 to on or about 31 August 2009). Although the members inquired about how consent factored into the relationship between the appellant and SrA CH, we do not find this to be akin to the "mixed message" scenario in *DiPaola*.

Moreover, the additional instructions from the military judge to the members were limited to the Article 120, UCMJ, wrongful sexual contact specification. The trial judge clarified with the President of the court-martial panel that their questions focused on the issue of mistake of fact as to consent for wrongful sexual contact. The panel President was satisfied with the additional instruction and so informed the military judge. In our opinion, the additional instruction clearly informed the members the parameters for considering reasonableness, military rank, and position as applied to mistake of fact for wrongful sexual contact.

Under the unique set of facts before us, we conclude that *DiPaola* is distinguishable from this case, and conclude that any error would have been harmless beyond a reasonable doubt if the military judge erred by not giving the mistake of fact as to consent instruction for maltreatment.

*Providency of the Plea*

The appellant pled guilty to violating a lawful general regulation, Air Force Instruction (AFI) 33-119, *Air Force Messaging*, ¶ 3.9.1 (24 January 2005), by wrongfully using his government computer, cell phone, and email account for other than official use. The military judge correctly stated the elements and definitions of the offense, explained that the AFI does not prohibit all personal communication using government resources, and clarified with the appellant that the charged wrongful communications pertained to

the flirtatious and sexual communications described during the plea inquiry into the unprofessional relationship charges. The appellant argues that the cited paragraph of the AFI does not prohibit the charged misconduct, focusing on the AFI's distinction between official and authorized use.

A military judge must determine whether an adequate basis in law and fact exists to support a guilty plea by establishing on the record that the "acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969). Acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). We afford significant deference to the military judge's determination that a factual basis exists to support the plea. *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)); *see also United States v. Barton*, 60 M.J. 62 (C.A.A.F. 2004). Among the reasons for giving broad discretion to military judges in accepting guilty pleas is the often undeveloped factual record in such cases as compared to that of a litigated trial. Rejection of a guilty plea requires that the record show a substantial basis in law and fact for questioning the providence of the plea. *Inabinette*, 66 M.J. at 322; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Paragraph 3.9 of the AFI permits official and authorized use of government communications systems. Subparagraph 3.9.1 defines official use and lists specific uses that would not be considered official including sending "inappropriate messages to groups or individuals." Subparagraph 3.9.3 defines authorized limited personal use along with examples. Violation of either subparagraph is punitive. The appellant admitted that his use of government equipment for flirtatious and sexual communications violated paragraph 3.9.1. His argument on appeal might have some merit if he had added during the plea inquiry that he somehow thought these communications constituted authorized personal use under paragraph 3.9.3. But he did not. Rather, he disclaimed any legal justification or excuse for his actions and told the judge that the flirtatious and sexual "e-mails, phone calls, and text messages violated the general regulation pertaining to the approved and appropriate use of these assets." On this record we find no substantial basis in law and fact for questioning the acceptance of the plea.

*Sentence Appropriateness*

The appellant argues the approved sentence of a bad-conduct discharge and reduction to E-1 is inappropriately severe based on (1) his prior honorable service and (2) the relative severity of the sentence as compared to "the range of punishments typically meted out" for similar offenses. We review sentence appropriateness de novo. *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005). We make such determinations in light of the character of the offender, the nature and seriousness of his offenses, his record of service, and the entire record of trial. *United States v. Snelling*,

14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). Additionally, while we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395-96 (C.M.A. 1988). Applying these standards to the present case, we do not find the approved sentence inappropriately severe, nor do we find sentence comparison appropriate. *See United States v. Christian*, 63 M.J. 714, 717 (A.F. Ct. Crim. App. 2006) (citing *United States v. Wacha*, 55 M.J. 266, 267-68 (C.A.A.F. 2001)), *aff'd*, 66 M.J. 291 (C.A.A.F. 2008).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[6] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are

AFFIRMED.

WEBER, J., with whom HECKER, J., MITCHELL, J., and WIEDIE, J., join, concurring:

I agree our superior court ruled in *United States v. Garcia*, 44 M.J. 496 (C.A.A.F. 1996) that mistake of fact can be an affirmative defense to a charge of maltreatment. Under *Garcia*, a successful mistake-of-fact defense to maltreatment must include not only a subjective belief of consent but also a belief that was reasonable under all the circumstances. *Id.* at 498. *Garcia*'s position is sound, since an accused who reasonably believed he had the consent of the other party has not formed a general intent to engage in "offensive" comments of a sexual nature. *Manual for Courts-Martial (MCM)*, Part IV, ¶ 17.c.(2) (2008 ed.). An honest and reasonable belief that the other person has consented to comments of a sexual nature therefore "goes to [an] . . . element requiring only general intent or knowledge," specifically the element that the accused was cruel toward or maltreated the other person. Rule for Courts-Martial (R.C.M.) 916(j). Mistake of fact as to consent can be an affirmative defense to a charge of maltreatment.

---

[6] We note that the overall delay of over 18 months between the time the case was docketed at the Air Force Court of Criminal Appeals and completion of review by this Court is facially unreasonable. Because the delay is facially unreasonable, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *See United States v. Moreno*, 63 M.J. 129, 135-36 (C.A.A.F. 2006). When we assume error, but are able to directly conclude that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). This approach is appropriate in the appellant's case. The post-trial record contains no evidence that the delay has had any negative impact on the appellant. Having considered the totality of the circumstances and the entire record, we conclude that any denial of the appellant's right to speedy post-trial review and appeal was harmless beyond a reasonable doubt.

I respectfully disagree with the majority in concluding the military judge was not required to instruct on this defense because it was not placed "in issue" by the facts of this case. As the majority notes, a matter is considered "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (quoting R.C.M. 920(e), Discussion). "Any doubt whether an instruction should be given should be resolved in favor of the accused." *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). Here, the defense of mistake of fact as to consent was raised by "some evidence." Most directly, SrA CH testified that she believed the appellant thought she was reciprocating his actions. Additional evidence supporting the conclusion that the defense was placed "in issue" includes the appellant's statement that he believed a hug and kiss with SrA CH were mutual, SrA CH's texting intimate pictures of herself with the appellant, and SrA AR's testimony that she attempted to give the appellant the impression his text messages did not offend her and that she chose to "play along" with the messages. Trial defense counsel's closing argument repeatedly asserted the two female Airmen welcomed the appellant's actions, as demonstrated by their text messages to him, the pictures sent to him, their decisions to spend time with the appellant, and similar evidence.

The majority finds the appellant's mistaken belief that SrA CH and SrA AR consented to his conduct was not objectively reasonable. However, that conclusion belongs to the members, not the military judge. Questions of objective reasonableness are normally questions of fact left to the members. *See, e.g., United States v. Bellamy*, 36 C.M.R. 115, 119 (C.M.A. 1966) (holding law officer erred in failing to instruct on lesser-included offense to voluntary manslaughter, because "[w]hether a particular provocation has spent its force and what constitutes a reasonable time for cooling are ordinarily questions of fact for the jury; and the court cannot take it from the jury by assuming to decide it as a question of law.") The question facing the military judge was simply whether the members might have relied on some evidence, however credible.

I do not believe the defense was required to separately introduce evidence of the objective reasonableness of the appellant's consent to trigger the instruction requirement, as the majority requires. The majority agrees the defense elicited "some evidence" to indicate the appellant subjectively believed SrA AR and SrA CH consented to his actions. This same evidence also provides "some evidence" to support the objective component of a mistake of fact as to consent defense. Our superior court has held that for a general intent element in an indecent assault case, a mistake-of-fact defense (requiring both a subjective belief of consent and an objectively reasonable belief) was raised by "mixed message" evidence that the victim consented to and willingly participated in some of the sexual acts listed in the specification. *United States v. DiPaola*, 67 M.J. 98, 102 (C.A.A.F. 2008). The Court held such consensual acts could be seen, in conjunction with a past sexual relationship, as creating a "mixed message" as to which acts were permissible and which were off-limits. *Id*. The *DiPaola* Court did not require defense

counsel to separately introduce evidence of the reasonableness of the appellant's mistake of fact, and neither should this Court.

My conclusion is reinforced by the fact that the military judge elected to instruct the members that evidence SrA CH or SrA AR consented could be considered as a factor in determining whether the appellant maltreated the Airmen. Military judges have "substantial discretionary power" in deciding whether to issue instructions, but the question of whether the military judge properly instructed the panel is a question of law we review de novo. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). By electing to give this instruction, the military judge impliedly determined consent was placed "in issue." If consent was placed in issue, mistake of fact as to consent was likely to have been placed in issue as well, particularly under the facts of this case. The military judge's decision not to issue an affirmative defense instruction was based on his legal determination that mistake of fact as to consent is not a defense to a charge of maltreatment, not a subjective call as to whether the evidence raised the issue. Under a de novo standard, I therefore would hold some evidence was introduced on the mistake of fact as to consent issue, and the military judge was required to give the instruction.

However, I would affirm the findings and sentence based on a finding that the military judge's error was harmless beyond a reasonable doubt. As the majority convincingly explains, *DiPaola* does not control the issue of prejudice in this case. The members, pursuant to the military judge's instructions, considered evidence that SrA CH or SrA AR may have consented to the appellant's actions, albeit not as an outright affirmative defense. They nonetheless convicted the appellant. I see no reasonable possibility the members would have decided any differently had they received a mistake-of-fact instruction, particularly considering the nature of the appellant's misconduct.

In addition, even if the error in this case was not harmless beyond a reasonable doubt, I would reassess the sentence to the same sentence ultimately approved. The appellant was adjudged a sentence of a dishonorable discharge, confinement for 20 months, and reduction to the grade of E-1. In a significant act of clemency, the convening authority reduced the sentence to a bad-conduct discharge, confinement for only 4 months, and reduction to E-1. Applying the analysis laid out by our superior court in *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), I see no possibility the members would have adjudged any sentence less than that approved in this case, even if the appellant was not convicted of maltreating the two Airmen.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court