UNITED STATES, Appellee

v.

Thomas J. SCHUMACHER, Staff Sergeant
U.S. Marine Corps, Appellant

No. 11-0257

Crim. App. No. 201000153

United States Court of Appeals for the Armed Forces

Argued October 11, 2011

Decided December 7, 2011

STUCKY, J., delivered the opinion of the Court, in which BAKER,
C.J., ERDMANN and RYAN, JJ., and EFFRON, S.J., joined.


Counsel


For Appellant:  Major Kirk Sripinyo, USMC (argued).


For Appellee:  Lieutenant Ritesh Srivastava, JAGC, USN (argued);
Colonel Louis J. Puleo, USMC, and Brian K. Keller, Esq. (on
brief); Colonel Kurt J. Brubaker, USMC.


Military Judge:  John R. Ewers


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review in this case to determine whether the military judge erred by not giving a self-defense instruction in regard to an assault charge for pointing a pistol at a member of the military police (MP). We also specified an additional issue, without briefs: Whether the specification alleging communication of a threat under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), failed to state an offense. We hold that the military judge did not err in not giving the self-defense instruction because the evidence did not reasonably raise the defense. However, we remand the case to the United States Navy-Marine Corps Court of Criminal Appeals (CCA) to determine whether, in light of United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011), the specification alleging a communication of a threat states an offense.

I.

A.

Contrary to Appellant's pleas, a general court-martial with members found Appellant guilty of failing to obey a noncommissioned officer, two specifications of simple assault, and communicating a threat in violation of Articles 92, 128, 134, UCMJ, 10 U.S.C. §§ 892, 928, 934 (2006). Appellant was sentenced to a bad-conduct discharge, confinement for one year, partial forfeitures, and reduction to the grade of E-3. The

convening authority approved the sentence, and the CCA affirmed the findings of guilty and the sentence approved by the convening authority. United States v. Schumacher, No. 201000153, 2010 CCA LEXIS 389, at *20, 2010 WL 4840062, at *7 (N-M. Ct. Crim. App. Nov. 30, 2010) (unpublished).

B.

Appellant and his wife, Army Second Lieutenant KD, were having a loud, prolonged confrontation in their on-base quarters about KD's deploying. During the argument, Appellant took KD's cell phone and refused to return it. In front of Appellant, KD requested that her neighbor call the MPs. She thought that the MPs would force Appellant to return her phone.

Upon hearing that the MPs were being called, Appellant went to the garage to clean his guns, which was his hobby. The neighbor calling the MPs heard a reference to a gun and told the operator that she thought Appellant was going to get a gun.

KD followed Appellant into the garage, where he had a pistol and a rifle out for cleaning. KD testified that "I told him that, you know, well, obviously we both know the MPs are coming and, you know, I told him, let's just go outside, talk to the MPs." The MPs arrived approximately four minutes after KD's neighbor initiated the call.

The MPs testified that after hearing screaming from inside the house they knocked and announced their presence as they

3

entered, but KD testified she did not notice anyone enter the house until the MPs were behind her with their guns drawn. One of the MPs testified that they arrived dressed in "camouflage utilities, our MP badge, and our MP gear -- our black gear with our pistol and our OC spray, handcuffs, baton." Both MPs testified that when they were behind cover Appellant would point both guns in KD's general direction. But when Lance Corporal F, an MP and the victim of the assault charge at issue, left cover, Appellant would point the pistol in his direction. The MPs testified that Appellant said "I've killed people before. It's nothing for me to kill a few fucking MPs," while he waved his pistol.

### C.

When instructions to the members were being considered, the military judge discussed with both parties whether a self-defense instruction should be given in regard to the assault charge against Lance Corporal F. During the discussion, the military judge stated, "I don't think there's any evidence at all that by the time he brandished that weapon towards the MPs he didn't realize they were MPs. Tell me if you disagree." Defense counsel responded, "I don't disagree."

Defense counsel's theory at trial was that Appellant "believes that [the MPs] are going to kill him even though he knows they are MPs, and killing him in his eyes is not lawful

4

because he hasn't done anything yet." The military judge stated that before one inquired into Appellant's subjective belief that there must be some objective showing of "whether or not [Appellant] reasonably believed that an unlawful application of force was going to be used against him." The military judge ultimately concluded that "[t]here's no evidence of facts and circumstance at the time of the alleged assault [on the MP] from which the trier of fact could reasonably conclude that the accused reasonably apprehended the wrongful infliction of bodily harm by [the MP]."[1]

### D.

On appeal, Appellant argues that, because KD testified that she did not believe the MPs would enter her house uninvited, "[t]he couple had no idea who the MPs were, and saw them as armed intruders." Appellant's theory on appeal seems to be that due to the confusing, fast-paced situation, Appellant initially

---

[1] Appellant does not rely on this theory of error on appeal. The military judge was correct in not giving the requested instruction based on this theory. Military officials are allowed to use reasonable force in carrying out their official duties. See United States v. Shepherd, 33 M.J. 66, 69-70 (C.M.A. 1991). To conclude that a military official's use of force is wrongful for an instruction on self-defense, the evidence must show that the military official either used unreasonable force or was acting in something other than an official capacity. See United States v. Lewis, 7 M.J. 348, 352 (C.M.A. 1979). Nothing presented during trial would have allowed reasonable court members to find that the MPs were acting outside of their official capacity or using unreasonable

made a mistake of fact as to the identity of the armed men in his house when the simple assault was first committed. Appellant also contends that the military judge and the lower court inappropriately passed judgment on the credibility of the evidence when evaluating whether there was some evidence in the record to support the self-defense instruction.[2]

## II.

To present a valid claim for self-defense, the evidence must show that the accused:

> (A)  Apprehended, on reasonable grounds, that bodily harm was about to be inflicted wrongfully on the accused; and

> (B)  In order to deter the assailant, offered but did not actually apply or attempt to apply such means or force as would be likely to cause death or grievous bodily harm.

Rule for Courts-Martial (R.C.M.) 916(e)(2).

An allegation of error in regard to a failure to give a mandatory instruction is reviewed de novo. United States v. Lewis, 65 M.J. 85, 87 (C.A.A.F. 2007).  A military judge must instruct members on any affirmative defense that is "in issue." R.C.M. 920(e)(3).  "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been

---

force in light of the dangerous and dynamic situation they were entering.
[2] Appellant also contends that the military judge and the CCA incorrectly stated the standard for determining whether an

6

admitted upon which members might rely if they choose.'" Lewis, 65 M.J. at 87 (quoting R.C.M. 920(e) Discussion; United States v. Gillenwater, 43 M.J. 10, 13 (C.A.A.F. 1995)). In other words, "some evidence," entitling an accused to an instruction, has not been presented until "there exists evidence sufficient for a reasonable jury to find in [the accused's] favor." Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896)); see also United States v. Davis, 53 M.J. 202, 205 (C.A.A.F. 2000) ("When evidence is adduced during the trial which 'reasonably raises' an affirmative defense . . . the judge must instruct the court panel regarding that affirmative defense . . . ." (citing United States v. Rodwell, 20 M.J. 264 (C.M.A. 1985))).

Thus, the military judge must answer the legal question of whether there is some evidence upon which members could reasonably rely to find that each element of the defense has been established. This test is similar to that for legal sufficiency. Cf. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see United States v. Black, 3 C.M.A. 57, 60, 11 C.M.R. 57, 60 (1953) ("Assuming the truth of each statement made by the accused in explanation of his actions, we conclude that neither of the distinguishing factors of voluntary manslaughter were

---

affirmative defense was raised. Even if true, this would not affect our de novo review of the granted issue.

7

shown."); see also United States v. Harris, 29 C.M.R. 810, 814 (A.F.B.R. 1960) ("Resolving all conflicts in the evidence in favor of the accused, we find no basis for concluding that the accused was using reasonable force which he reasonably believed was necessary to eject his erstwhile guests, and no possibility that the court members, however instructed, could have so concluded.").

## III.

Appellant's assertion that a self-defense instruction was necessary because he believed that the individuals in his home were unknown intruders is untenable. Appellant was present when KD requested that her neighbor call the military police. The military police arrived four minutes later. During the interim period, KD was trying to persuade her husband to put away his guns because "I told him that, you know, well, obviously we both know the MPs are coming." When the MPs arrived, they were dressed in full military police attire including badges. While in the process of waving the pistol around, Appellant stated "I've killed people before. It's nothing for me to kill a few fucking MPs."[3]

---

[3] KD testified that she could not remember if Appellant did or did not say this. As such, the MPs' testimony on this point remained uncontradicted.

Although not dispositive, trial defense counsel did not argue that a self-defense instruction should be given on an intruder theory at trial. See United States v. Hibbard, 58 M.J. 71, 76 (C.A.A.F. 2003) ("Although the defense presentation at trial is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence, we may take into account the absence of [such an] approach from the defense case when considering [whether the evidence reasonably raised an affirmative defense]."). In fact, trial defense counsel explicitly denied that the evidence could even make out such a theory. The military judge stated, "I don't think there's any evidence at all that by the time he brandished that weapon towards the MPs he didn't realize they were MPs. Tell me if you disagree." The defense responded, "I don't disagree."

Given the sequence of events, the physical appearance of the MPs, Appellant's statement indicating knowledge of who the people were, and defense counsel's concessions at trial, the military judge determined there was no evidence that Appellant reasonably perceived the infliction of wrongful bodily harm. In doing so, we hold that he did not err.

## IV.

We affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals as to Appellant's convictions for failing to obey a noncommissioned officer and the two

specifications of simple assault.  We set aside that part of the judgment affirming Appellant's conviction for communicating a threat in violation of Article 134, UCMJ, and the sentence, and remand for consideration in light of our decision in United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011).