# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Petitioner**
**and**
**ST, by and through Captain JOHN C. ALLISON**
**Special Victim Counsel, Petitioner**
**v.**
**Lieutenant Colonel KENNETH SHAHAN, Military Judge**
**United States Army, Respondent**
**and**
**Sergeant COLBY S. MORRIS,**
**United States Army,**
**Real Party in Interest**

**ARMY MISC 20180088**

Headquarters, 8th Theater Sustainment Command
Kenneth Shahan, Military Judge
Colonel Ryan B. Dowdy, Staff Judge Advocate

For Petitioner United States: Captain Catharine M. Parnell, JA (on brief); Captain Allison L. Rowley, JA; Captain Catharine M. Parnell, JA (on supplemental brief); Colonel Tania M. Martin, JA; Captain Catharine M. Parnell, JA; Captain Allison L. Rowley, JA (reply brief).

For Petitioner ST: Captain John C. Allison, JA (on brief).

For Real Party in Interest: Lieutenant Colonel Tiffany M. Chapman, JA; Major Brendan R. Cronin, JA; Captain Benjamin A. Accinelli, JA (on brief).

18 April 2018

-----------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON PETITION
FOR EXTRAORDINARY RELIEF IN THE NATURE OF
A WRIT OF MANDAMUS
-----------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

This case is before us pursuant to the All Writs Act, 28 U.S.C. § 1651 and Article 6b, Uniform Code of Military Justice, 10 U.S.C. § 806b [UCMJ]. This petition arises from a ruling by the military judge that the alleged victim's clothing

(thong-underwear and a tank top) did not fall within the scope of Military Rule of Evidence [Mil. R. Evid.] 412.  As no facts were admitted at the hearing on which to base this ruling, we set aside the decision and return the case to the military judge.

## BACKGROUND

On the morning of a contested trial, and just before the panel members were to be assembled, the military judge held a closed hearing to consider a recent defense motion filed under Mil. R. Evid. 412.

Neither side called any substantive witnesses or admitted any evidence.  Instead, there was a proffer as to what the testimony would be.  The parties, however, did not agree on the proffered facts.  As the civilian defense counsel gave a proffer of the alleged victim's testimony ("Ms. ST"), the government stood up and stated, "Your Honor, so this is beyond what we agreed upon.  The proffer—this is not what we agreed upon."  The parties ended up telling the military judge two stories that were incompatible at key points.

A box containing the alleged victim's clothing was brought into court through a law enforcement agent.  The agent was asked one substantive question which was "is this the clothing in that box right there?"  The agent agreed.  But, the agent did not describe the clothing, nor was the box opened and the clothing examined.  The military judge decided not to open the box for two reasons.  First, the military judge expressed concerns about breaking the "chain of custody" by opening the sealed box.  The civilian defense counsel concurred with this concern.[1]  Second, the military judge questioned whether actually viewing the clothing in question was necessary as he was aware of what a thong and tank top looked like without viewing the evidence.

The parties then described to the military judge what the clothing in the box looked like, but again fell into disagreement.  Specifically, they disagreed about the length of the tank top and therefore how revealing it would be on the victim.  The government asserted that the tank top would fall to the victim's mid-thigh.  The defense stated that it was "[s]horter than that, Your Honor.  Not mid-thigh; above mid-thigh."

The military judge ruled on the record, but on grounds different than those asserted by the defense.  The ruling did not include findings of fact.  The military judge determined that the clothing was not prohibited by Mil. R. Evid. 412 because the rule's prohibition on introducing evidence of a victim's mode of dress did not include the clothing she was wearing at the time of the offense.

---

[1] The source of this concern is not explained by the limited record.

2

The government petitioned this court for extraordinary relief.[2] We provided the opportunity for Ms. ST file a separate petition under Article 6b, UCMJ, which she did.[3]

As just noted, almost no evidence or testimony was introduced at the closed Mil. R. Evid. 412 hearing and the military judge made no findings of fact. Ultimately, this is a fatal flaw requiring remedy. Based on this record, we also make no findings of fact. However, in order to provide some background so the reader can understand the parties' arguments in some context, we offer a partial summary below of their respective positions. While practically no evidence was introduced at the hearing, there was plenty of argument from each party about what they thought the evidence would show.

## LAW AND DISCUSSION

### A. Standard of Review

A writ of mandamus is an extraordinary writ and is a "drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983). To prevail, a petitioner must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under

---

[2] The government also moved for this court to consider affidavits from two trial counsel. We denied the motion and we briefly explain our reasoning here. The affidavits recount discussions that occurred during several Rule for Courts-Martial [R.C.M.] 802 sessions. According to the affidavits, the military judge read a draft ruling to the parties and entertained a robust debate in chambers about the correctness of the draft ruling. The affidavits also claim to restate several comments by the military judge for the apparent purpose of indicating incorrect legal reasoning or perhaps bias.

If the government had an objection to the conduct of the R.C.M. 802 conference, or the military judge's summary of the conference, the government was obligated to make those objections part of the record at the time of trial. While R.C.M. 802 and Article 39(b), UCMJ, do not allow the parties to litigate motions in chambers—if that in fact is what happened—in the context of a writ-petition, a party cannot silently acquiesce to an R.C.M. 802 session at trial only to then request relief based on a unilaterally offered supplement to the record on appeal. Or, at least, we in our discretion decline to consider it.

[3] For all relevant purposes the two petitions assert the same issues and therefore we treat them as one.

the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

### B. Analysis

The military judge ruled that "my ruling is that what the victim was wearing that night is not evidence that is protected by M.R.E. 412." The military judge further elaborated: "I find that the term 'manner of dress' includes - - contemplates what an alleged victim has been seen wearing on previous occasions, but it is not meant to apply to what an alleged victim is wearing on the evening of the actual alleged assault. . . ."[4]

### 1. Is an alleged victim's clothing not covered by Mil. R. Evid. 412 as a matter of law?

We interpret the military judge's ruling as stating that an alleged victim's dress at the time of the offense is, *as a matter of law,* not covered by the prohibitions in Mil. R. Evid. 412. We reach this interpretation for two reasons. First, it is the natural reading of the ruling the military judge read into the record. Second, the military judge seemed well aware that the parties could not agree on a proffer, that no substantive witnesses were called, and that he declined to open the box containing the clothing in question. That is, constrained by the failure of the parties to admit actual evidence, the military judge attempted to structure his ruling as one of pure law.

On this issue of law, we disagree. Military Rule of Evidence 412 focuses not on the types of evidence (e.g. clothing) to be admitted, but the purpose for which the evidence sought to be introduced will be offered. The operative language of the rule is as follows:

> The following evidence is not admissible in any proceeding involving an alleged sexual offense except as provided in subdivisions (b) and (c):
>
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

---

[4] The rule defines the term "sexual predisposition" as "referring to an alleged victim's mode of dress, speech or lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the factfinder." Mil. R. Evid 412(d).

> (2) Evidence offered to prove any alleged victim's
> sexual predisposition.

Mil. R. Evid. 412(a).

What is clear is that the purpose for which the evidence is offered determines whether the evidence falls within the scope of the rule.[5] The same piece of evidence may be offered for both permissible and impermissible purposes. Certainly, for example, a short skirt offered to show that the alleged victim was promiscuous and was therefore likely to consent to sex is prohibited. The same skirt, offered by the defense because it contains DNA from someone other than the accused may be admissible under an exception to the rule if the identity of the assailant is a fact in issue. Mil. R. Evid. 412(b)(1)(B). And again, the same skirt offered for a purpose unrelated to sexual behavior or predisposition, (e.g. as physical evidence when torn or for purposes of identity, "I am the person in the video wearing that skirt") may fall outside the rule entirely.

If the evidence falls within the rule, it "is still subject to challenge under Mil. R. Evid. 403." Mil. R. Evid. 412(c)(3). Evidence may have some probative value, but the weight of the evidence can be marginal (or central) to the offering party's case. The danger of an impermissible inference from the evidence may be slight or grave. For example, evidence of several persons DNA on the alleged victim's clothing may be highly probative when the defense theory is one of identity or alibi. The same evidence, but in a case where the defense's theory is consent, may have its probative value outweighed by the danger that the factfinder improperly infers the alleged victim is promiscuous. Often, the probative value of the evidence will depend on the offering party placing the evidence in context within their theory of the case.

As a matter of law, Mil. R. Evid. 412 does prohibit the introduction of an alleged victim's clothing at the time of an offense when offered for a purpose prohibited by the rule. Thus, we find the military judge's ruling was incorrect. Accordingly, we turn to the next question: for what purpose was the alleged victim's clothing offered.

### 2. *What was the clothing offered to prove in this case?*

During the closed hearing the defense argued that the clothing Ms. ST was wearing was evidence of her sexual behavior. Under the defense theory, Ms. ST's

---

[5] And, courts are not so naive as to fail to recognize that there are often unstated purposes for introducing evidence.

choice of dress, among other things, created in the mind of the accused an honest and reasonable belief that she consented to sex. The defense argued that such evidence met the requirements for the constitutional exception under Mil. R. Evid. 412(b)(C).

The military judge and the civilian defense counsel had the following exchange:

> MJ: . . . But, I think your theory is that the fact that she never changed out of that outfit into something more modest would have created a reasonable mistake of fact in your client's mind that she wanted to engage in sex with him.
>
> CDC: Not only that, Your Honor, but in addition to that, the way she presented herself while she was wearing it. And, the Court would have to see how loose-fitting this-- the tank top was how she would have been exposing herself to [the accused]. And at that point, Your Honor, I would be pointing out to the Court the mistake of fact and the constitutional right to present evidence like that that would support my mistake of fact.

As the defense argument made clear, the defense saw the clothing as having reflected choices, decisions, and the sexual behavior of the alleged victim.

The government at the closed hearing disagreed. The government argued that what Ms. ST. wore to bed—on a night when she was not expecting visitors—is prohibited sexual predisposition evidence. This is not, goes the government's argument, a case where an alleged victim "slipped into something more comfortable" and such conduct could plausibly be construed as sexual behavior that would fit under an exception to the rule, or could be considered part of the res gestae of the offense. Thus, the government fears a panel, presented with testimony or evidence regarding the clothing, will make an improper inference about the alleged victim's sexual predisposition.

In this case, it seems clear that the alleged victim's clothing was offered for either the purpose of demonstrating her sexual behavior, as argued by the defense, or her predisposition, as argued by the government. While an alleged victim's clothing, like other evidence collected from the scene of a crime, may be relevant and admissible for reasons that fall outside of Mil. R. Evid. 412, this was not the defense's motion.

We do not resolve whether the alleged victim's clothing was, in this case, evidence of her sexual behavior, her sexual predisposition, or whether or not the evidence fell within an exception to Mil. R. Evid. 412. These are mixed questions of law and fact. And, no facts were introduced at the closed hearing to answer these questions.

While the parties offered the military judge plenty of argument on the motion, they did not present the court with evidence on which he could base a ruling.[6] The parties attempted to, but could not agree on a proffer of Ms. ST's testimony. The parties disagreed in their description of what the clothing looked like, and the military judge declined to open the box to make a factual determination. The parties argued substantively different timelines of the evening in question.

The defense, which had the burden, put on no evidence to support the assertion that the accused had an honest belief regarding consent because of seeing Ms. ST in her clothing or because of the other asserted sexual behavior. "The test for determining whether an affirmative defense of mistake of fact has been raised is whether the record contains some evidence of an *honest* and *reasonable* mistake to which the members could have attached credit if they had so desired." *United States v. Davis*, 76 M.J. 224, 228 (C.A.A.F. 2017) (quoting *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003)) (emphasis added). "[T]he military judge must answer the legal question of whether there is some evidence upon which members could reasonably rely to find that *each* element of the defense has been established." *United States v. Schumacher*, 70 M.J. 387, 389-90 (C.A.A.F. 2011) (emphasis added).

One further example illustrates the importance of evidence in deciding motions. At trial and at this court, the parties raised this panel's decision in *United States v. Gaddy*, 2017 CCA Lexis 179 (Army Ct. Crim. App. 20 Mar. 2017).

In *Gaddy,* we considered whether sexual conduct between the accused and the alleged victim "moments" before the alleged offense was "other sexual behavior" under the rule. *Id.* at *5. In that case, the accused claimed that sexualized dancing was followed immediately by consensual sex. *Id.* When the military judge prohibited the accused from raising this evidence, we described it as requiring the accused to begin his defense mid-sentence. *Id.* That is, contrary to human experience about sexual relations, the accused was required to assert that he had consensual sex with the victim without being able to explain the consensual sexual

---

[6] The record submitted to this court by the parties consists of the defense motion, a few emails, and the transcript of the closed hearing. The military judge was not asked to import evidence from other motions.

behavior (in the defense theory) that had happened the moment before the sexual conduct. Key to our ruling was that the sexualized dancing *immediately* preceded the charged sexual conduct without interruption. Accordingly, we did not see the dancing as *other* sexual behavior. *Id.* at \*6. We also caveated our ruling by applying it only to offered evidence of sexual behavior, not evidence of sexual predisposition.[7] *Id.*

In *United States v. Schelmetty*, we distinguished *Gaddy* when the sexual behavior in question was "temporally and physically separate from the charged offense." 2017 CCA Lexis 445, \*5 (Army Ct. Crim. App. 30 Jun. 2017). In that case, the alleged offense occurred in an upstairs bedroom. *Id.* at \*4. A second, allegedly consensual, event happened "shortly afterwards" downstairs. *Id.* We determined that the break in time and space distinguished the case from *Gaddy* and that therefore the downstairs conduct was "other sexual behavior." *Id.*

The government argues that this case was unlike *Gaddy* because prior to the assault the victim went to sleep wrapped in a blanket; conduct that was physically and temporally separate from anything that had happened previously. The defense disagreed with both the government's reasoning and, again, did not agree with the government's proffer about the evidence.

Not surprisingly, determining whether sexual behavior that occurs close in time to the offense is part of the res gestae of the offense or is "other sexual behavior" under Mil. R. Evid. 412 is a factual inquiry. We will not attempt to resolve this issue because, among other reasons, there is no factual record on which to rely.

**CONCLUSION**

Given the absence of facts to support any ruling, we grant the government's writ-petition, but only in part. Given the military judge's erroneous determination that an alleged victim's clothing at the time of the offense falls outside of Mil. R. Evid. 412 as a matter of law, and given the absence of any facts that would support reaching the same effective result for different reasons,[8] we find the government's

---

[7] The exceptions in Mil. R. Evid. 412(b)(1)(A) and (B) apply only to sexual behavior evidence, not sexual predisposition evidence. As sexual predisposition evidence is essentially a specific type of character evidence, Mil. R. Evid. 404 may also be applicable.

[8] The "tipsy coachman" doctrine allows an appellate court to affirm a trial court that reaches the right result but for the wrong reasons so long as there is any basis which

(continued . . .)

only means for relief is to set the ruling aside; the right to this relief is clear and indisputable; and the issuance of the writ is necessary and appropriate under the circumstances. While military judges have broad discretion to decide evidentiary issues, and writ-petitions are an extreme measure to correct erroneous rulings, there must be some evidence to support a Mil. R. Evid. 412 ruling to avoid it becoming a shell of a proceeding.

However, we do not go any further. The absence of evidence to support a Mil. R. Evid. 412 motion would normally operate against the moving party. That is, if there is no evidence the moving party loses. However, our decision today does not reach that issue for two reasons.

First, the limited record on appeal may suggest a somewhat rushed proceeding which may have contributed to the limited factual record in front of us. The defense's motion was filed five days before trial was scheduled to begin. The closed hearing was conducted the morning of trial with the panel members standing by to assume their duties. The military judge summarized an R.C.M. 802 conference in which the "timing of this 412 motion" was discussed, but without placing on the record the nature of the issue.

Untimely Mil. R. Evid. 412 motions are prohibited absent good cause. Mil. R. Evid. 412(c)(1)(A). As the motion was allowed to proceed, and the record on appeal contains no objection by the government to the timeliness of the motion, we infer that either the motion was timely, the government forfeited any untimeliness objection, or the military judge found good cause to excuse a late filing.[9] Either

---

(. . . continued)

would support the judgment in the record. *See United States v. Carista*, 76 M.J. 511, 515 (Army Ct. Crim. App. 2017).

[9] Military judges should have confidence that they may enforce filing deadlines contained in the Manual for Courts-Marital and their pretrial orders. Punctuality and compliance with rules and court orders should be expected behavior at a military trial.

We would suggest the following framework. As the presiding officer of a court-martial, the military judge has broad authority to control the court-martial. *See* R.C.M. 801(a)(3). Faced with an untimely motion, the military judge is given broad discretion regarding whether to consider the motion or to dismiss it as being untimely, and such a decision will not be lightly second-guessed by the appellate judges of this Court. However, when the judge determines it is necessary to consider a late motion on the eve of trial, then the motion must be fully considered

(continued . . .)

way, once a military judge allows a motion to proceed, the parties are entitled to a full proceeding, including the right to "call witnesses . . . and offer relevant evidence." Mil R. Evid. 412(c)(2). While we make no conclusion one way or the other regarding whether the parties were provided sufficient opportunity to litigate the issue, prudence suggests that we leave it to the military judge to determine what steps are necessary to ensure compliance with the rule and to ensure a fair and just court-martial for the accused.

Second, and relatedly, ruling on the admissibility of the clothing (that is, ruling on the substance of the Mil. R. Evid. 412 motion) is not "necessary" to decide this writ-petition. Accordingly, we limit the scope of our ruling to the minimum relief required.

The Mil. R. Evid. 412 ruling is SET ASIDE. Our stay of the proceedings is lifted and the case is returned to the military judge, who in his discretion may direct a new Mil. R. Evid. 412(c) proceeding as he determines may be warranted.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)
and litigated. Delaying the trial may be necessary. The appropriate decision should reflect the gravity of the issues at stake, and whether there was good cause for the delay.

In that sense, military judges should be guided by the principles contained in R.C.M. 102. The purpose of the rules for courts-martial are to obtain a "just determination" in every proceeding. R.C.M. 102(a). The rules "shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." R.C.M. 102(b).