*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**George B. SELLENEIT**
Fire Controlman Aegis Petty Officer Second Class (E-5)
U.S. Navy
*Appellant*

**No. 202400185**

_____

Decided: 17 March 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Justin McEwen

Sentence adjudged 9 May 2022 by a general court-martial tried at Naval Station Rota, Spain, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-3, restriction to the limits of USS *Porter* for 2 months, and forfeiture of all pay and allowances for two months.[1]

_____

[1] The convening authority waived imposition of any forfeiture in excess of two-thirds pay per month for two months.

For Appellant:
*Ms. Kimberly D. Barnes*

For Appellee:
*Commander John T. Cole, JAGC, USN*
*Lieutenant Erin Bourneuf, JAGC, USN*

Judge GANNON delivered the opinion of the Court, in which Senior Judge KISOR and Judge FLINTOFT joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

GANNON, Judge:

Appellant was convicted by members, contrary to his pleas, of one specification of unlawful entry in violation of Article 129, Uniform Code of Military Justice (UCMJ).[2]

Appellant asserts four assignments of error (AOEs): (1) whether the convening authority violated Article 25, UCMJ, when he excluded potential members whose rank was E-5 and below, and when he only considered names the staff judge advocate (SJA) gave to him; (2) whether the military judge abused his discretion when he denied Appellant's request for instructions relating to his defense of the unlawful entry charge;[3] (3) whether Appellant's Sixth Amendment right was abridged when the military judge sealed appellate exhibits that were not required to be sealed;[4] and (4) whether Appellant was deprived of his constitutional right to a fair and impartial members trial when

_____

[2] 10 U.S.C. § 929.

[3] Appellant raises this AOE under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] We have carefully considered the third AOE and find that it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356 (1987).

there was not a requirement to reach a unanimous verdict?[5] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's conviction for unlawful entry, in violation of Article 129, UCMJ stems from a series of events culminating in Appellant, after dark, crawling through Operations Specialist Second Class (OS2) Alpha's barracks window and entering her room without permission.[6]

In April of 2019, OS2 Alpha arrived at her new duty station at Naval Station Rota, Spain. Appellant and OS2 Alpha were acquaintances from a prior posting. Soon after arriving, OS2 Alpha ran into Appellant by coincidence; they had not remained in contact since their prior posting. As OS2 Alpha had just arrived, she had not yet been assigned quarters and still needed to check-in to the barracks. Appellant assisted OS2 Alpha with checking-in to her barracks room. While assisting OS2 Alpha with the room check-in, Appellant accompanied OS2 Alpha to her newly assigned room, which was located on the first floor of the barracks building.[7] Appellant asked if he could open the window.[8] Because it was on the first floor, OS2 Alpha did not feel safe with the window being open, so she told Appellant he could not open the window.[9] Appellant did so anyway.[10]

Later, after the room check-in was complete, Appellant invited OS2 Alpha out to a local off-base bar. During the course of the evening, OS2 Alpha left the bar without telling Appellant. When Appellant realized that OS2 Alpha had left the bar, Appellant returned to base and went to OS2 Alpha's barracks room. Appellant knocked on her door. OS2 Alpha did not answer. Appellant went outside and approached OS2 Alpha's window. Appellant then entered the barracks room through the window and proceeded to have a sexual encounter with OS2 Alpha. Appellant was charged with sexually assaulting OS2 Alpha

---

[5] We carefully considered the fourth AOE and find it does not warrant discussion or relief. *See United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023) (holding an accused servicemember does not have a constitutional right to a unanimous court-martial verdict), *cert. denied*, 144 S. Ct. 1003 (2024).

[6] All names in this opinion except for Appellant and counsel are pseudonyms.

[7] R. at 763.

[8] R. at 763.

[9] R. at 763.

[10] R. at 763.

in violation of Article 120, UCMJ, and unlawful entry in violation of Article 129, UCMJ. Appellant was acquitted of sexual assault and convicted of unlawful entry. Additional facts necessary to resolve the AOEs are addressed below.

## II. DISCUSSION

### A. Although the SJA Gave the Convening Authority Erroneous Advice that had the Effect of Excluding Potential Members in the Grade of E-5 and Below, Appellant Suffered No Prejudice.

Appellant asks the Court to set aside the findings and sentence because the convening authority selected members from a venire assembled by the SJA that wrongfully excluded prospective members in the grade of E-5 and below.

Some background discussion of the facts surrounding the convening authority's selection of members in this case is appropriate. Appellant was an E-5 at the time of the court-martial. Prior to the commencement of trial, Appellant filed a motion with the military judge requesting a stay of the proceedings on the grounds that the member venire was improperly constituted due to the "improper exclusion of members in the paygrade of E-5."[11] Indeed, on 8 April 2022, the SJA sent an Article 25, UCMJ, advice letter to the convening authority pertaining to the selection of members in the subject case.[12] In it, the SJA advised the convening authority, in part:

> In accordance with [Article 25, UCMJ] you shall detail to a court-martial the members you believe are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. The decision on who to detail is yours and yours alone. Each member shall be on active duty with the armed forces and shall be a commissioned officer, a warrant officer, or an enlisted person *over the rank of E-5.*[13]

---

[11] App. Ex. XXXVII, LXIX at 1.

[12] App. Ex. VII at 474.

[13] On 22 April 2022, the SJA sent another Article 25 advice letter to the convening authority seeking the excusal of several members of the venire due to operational commitments rendering them unavailable. In the excusal letter of 22 April 2022, the SJA included the same language – advising the convening authority to select members who were "over the rank of E-5" – as that contained in the 8 April 2022 Article 25 advice letter. App. Ex. VII at 474 (emphasis added). We note that the SJA used the term "rank" in his advice letters. The "term 'grade' means a step or degree, in a graduated scale of office . . . that is established and designated as a grade by law or regulation."

The SJA included a roster of 19 prospective members with the 8 April 2022 Article 25 advice letter. The convening authority selected 15 members from that roster. The SJA later explained in an email that the language "over the rank of E-5" was inadvertent and due to problems finding members senior to an accused in a different court-martial, where the accused in that case was a very senior E-5.[14] The SJA further explained that he should have advised the convening authority that the members in the subject case must be "senior to the accused" as opposed to "over the rank of E-5."[15]

### 1. *Standard of Review*

Whether a court-martial panel was selected free from systematic exclusion is a question of law we review de novo.[16] The defense bears the burden of establishing the improper exclusion of qualified personnel from the selection process.[17] If the defense is able to establish improper exclusion of qualified personnel, the government must show by competent evidence that the member selection process was free from impropriety.[18] Under *United States v. Dowty*, the Court will look to three factors to determine to what extent an impermissible member selection has taken place: (1) improper motive in picking a member pool; (2) systematic exclusion of otherwise qualified potential members based on rank or other impermissible variable; and (3) good faith attempts to be inclusive and open the court-martial process to the entirety of the military community.[19] "[W]here the government has intentionally included or excluded a class of eligible members, the government must demonstrate lack of harm,"[20]

---

10 U.S.C. § 101(b)(7). The "term 'rank' means the order of precedence among members of the armed forces." 10 U.S.C. § 101(b)(8). Despite this important distinction, we interpret the SJA's Article 25 advice letter to have had the practical effect of excluding all personnel whose *grade* was E-5 and below.

[14] On 5 February 2025, the Court directed the Government to produce several missing appellate exhibits as well as an email from the SJA relating to the members selection process and advice to the convening authority. Court Order of 5 February 2025. The SJA's email is dated 2 May 2022. Appellee's Resp. to Court Order to Produce Doc., App'x B (Mar. 3, 2025).

[15] Appellee's Resp. to Court Order to Produce Doc., App'x B (Mar. 3, 2025).

[16] *United States v. Bartee*, 76 M.J. 141, 143 (C.A.A.F. 2017) (citing *United States v. Kirkland*, 53 M.J. 22, 24, (C.A.A.F. 2000)).

[17] *Kirkland*, 53 M.J. at 24.

[18] *Id.*

[19] 60 M.J. 163, 171 (C.A.A.F. 2004).

[20] *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011).

that is, "that the error did not 'materially prejudice the substantial rights of the accused.'"[21]

### 2. Analysis

Here, the SJA advised the convening authority to exclude members on the impermissible basis of grade in violation of factor two of the *Dowty* factors. We find that Appellant has made a showing that prospective members were excluded on that impermissible basis. However, our analysis does not end there. We now look to whether the Government demonstrated that the error did not materially prejudice Appellant's substantial rights.

Our review of the record in this case convinces us that there is no evidence that the SJA's Article 25 advice letter of 8 April 2022 was drafted with any improper motive. At trial, the military judge found that there was no improper motive to "stack" or improperly exclude members.[22] Trial defense counsel conceded as much.[23] The military judge further found that in providing the advice to the convening authority that the selected members should be "above the rank of E-5," the SJA was attempting to comply with Article 25(e)(1), which prohibits an accused service member from being tried by a court-martial containing any member junior to the accused in "rank or grade."[24] The military judge further found that the convening authority was aware of his ability to appoint members "as he saw fit," and thus, could select members outside of the venire assembled by the SJA.[25] We find that the military judge's findings are not clearly erroneous.

Based on our review of the record, we are convinced that Appellant's substantial rights were not prejudiced by the conduct of this court-martial. We are convinced that: (1) the convening authority was a person authorized to convene a general court-martial; (2) the members who were ultimately selected met the criteria contained in Article 25, UCMJ; (3) the convening authority personally selected the members from a pool of eligible candidates; (4) the convening authority was aware that the decision as to which members to select was his alone, based on his determination of each candidate's age, education, training, experience, length of service, and judicial temperament; (5) the military judge

---

[21] *Dowty*, 60 M.J. at 173 (quoting Article 59(a), UCMJ).

[22] R. at 417.

[23] R. at 425.

[24] R. at 426.

[25] R. at 426-27.

presided over a vigorous voir dire process where Appellant successfully challenged several members of the venire and where the members who ultimately sat, all acknowledged their obligation to follow the military judge's instructions and consider Appellant's case fairly and impartially; (6) the members acquitted Appellant of the most severe charge and its specifications; and (7) the members imposed a lenient sentence.

Consequently, we are convinced that while the SJA's Article 25 advice to the convening authority was flawed and improperly advised the convening authority to exclude prospective members on the impermissible basis of grade, the record before us demonstrates that Appellant's substantial rights were not prejudiced by that error.[26]

## B. The Military Judge Did Not Abuse His Discretion When He Denied Appellant's Request For A Novel Instruction Relating to Appellant's Defense of the Unlawful Entry Charge.

### 1. Standard of Review

Whether members were properly instructed is a question of law we review de novo.[27] A military judge's decision to give, or not give, an instruction is reviewed for an abuse of discretion.[28] The abuse of discretion standard calls for more than a mere difference of opinion; the challenged action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[29] "The military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law."[30] A "military judge has 'substantial discretionary power' to decide whether to issue a jury instruction."[31]

While the "military judge has wide discretion in choosing the instructions to give, [a military judge] has a duty to provide an accurate, complete,

---

[26] *United States v. Bartlett*, 66 M.J. 426, 430 (C.A.A.F. 2008) (An administrative error in Article 25 selection process necessitates a showing of prejudice).

[27] *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014).

[28] *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996).

[29] *United States v. White*, 69 M.J. 236, 239 (C.A.A.F 2010) (citation modified).

[30] *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

[31] *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010) (quoting *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002)).

and intelligible statement of the law."[32]  Instructions should be "tailored to fit the circumstances of the case,"[33] and provide "lucid guideposts" to enable the court members to apply the law to the facts.[34]

"A military judge must instruct members on any affirmative defense that is 'in issue.'"[35] An affirmative defense is "in issue when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.'"[36] "We review the judge's decision to give or not give a specific instruction, as well as the substance of any instructions given, to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence."[37]

*2. Analysis*

The Defense requested the following specifically tailored instruction:

Unlawful Entry Defense:

The evidence has raised the issue of good faith on the part of the Accused concerning OS2 [Alpha's] health and well-being in relation to the offense of unlawful entry. The Accused is not guilty of the offense of unlawful entry if (1) there was an innocent trespass, and (2) it was committed either unintentionally or in good faith. The burden is on the prosecution to prove the Accused's guilt. If you are convinced beyond a reasonable doubt that, at the time of the charged offense, the Accused did not have a good faith then the defense of innocent trespass does not exist.[38]

---

[32] *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012) (citations omitted).

[33] R.C.M. 920(a), Discussion.

[34] *United States v. Buchana*, 19 C.M.A. 394, 396-97, 41 C.M.R. 396-97 (1970) (citations omitted); *see United States v. Killion*, 75 M.J. 209, 213-14 (C.A.A.F. 2016) (a military judge's instructions must be sufficient to provide necessary guideposts for an informed deliberation on the guilt or innocence of the accused).

[35] *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011) (quoting R.C.M. 920(e)(3)).

[36] *Schumacher*, 70 M.J. at 389 (citing *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (additional citations omitted).

[37] *McDonald*, 57 M.J. at 20 (citations and internal quotation marks omitted).

[38] App Ex. LV p. 2.  Trial defense counsel cited *United States v. Rockwell*, No. ARMY 20011057, 2004 CCA LEXIS 351, at *13-14 (Army Ct. Crim. App. June 28, 2004), in support of the proposed instruction.  We note that the *Rockwell* Court was

Trial defense counsel argued that the novel instruction was raised by the evidence and was thus required to be given. Trial defense counsel argued that the issue of innocent trespass through OS2 Alpha's barracks room window was raised by testimony that: (1) "OS2 Alpha had left [Appellant] at the bar without telling him;"[39] (2) after OS2 Alpha left the bar, Appellant "went to look for OS2 Alpha;"[40] (3) Appellant had gone through the window to "check" on OS2 Alpha;[41] and (4) "OS2 Alpha had a history of inviting [Appellant] into her room, in Virginia [at a previous posting].[42]

After litigating the issue, the military judge denied the Defense requested instruction.[43] The military judge found that "[o]n the issue of [innocent trespass] and whether I'm going to instruct on that, I find that the evidence has not been raised and I will not instruct on that general mistake of fact as it relates to the unlawful entry."[44] We agree that the military judge's decision was proper, and he did not abuse his discretion in declining to give the Defense requested nonstandard instruction.

Even assuming arguendo that the substance of the Defense proposed instruction was legally correct,[45] the military judge enjoys great deference in determining whether to issue a tailored instruction. Here, the military judge found that trial defense counsel failed to demonstrate that "some evidence" raised the necessity of issuing the Defense requested instruction. The "innocent trespass" instruction was not given because there was no evidence that Appellant's late-night entry into OS2 Alpha's barracks room was in fact, "innocent." The military judge did not abuse his discretion in rejecting Appellant's argument that "innocent trespass" was not "in issue" as defined in *Schumacher*.[46] After a careful review of the record, we find that the military judge's

---

assessing factual sufficiency, and does not, as we read it, support the purpose for which it was cited by trial defense counsel in the requested "innocent trespass" instruction.

[39] R. at 1143.

[40] R. at 1143.

[41] R. at 1144.

[42] R. at 1144.

[43] R. at 1146.

[44] R. at 1146.

[45] Because we find the military judge did not abuse his discretion, we do not reach the issue of whether the Defense requested instruction is legally correct.

[46] *Schumacher*, 70 M.J. at 389 (quoting R.C.M. 920(e)(3)).

final instructions sufficiently covered the issues in the case and focused on the facts presented by the evidence.[47]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[48]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[47] *McDonald*, 57 M.J. at 20.

[48] Articles 59 & 66, UCMJ.